DEBRA PEARSON, Indiv. and as Parent and Next Friend of Phoenix Pearson, a Minor, Plaintiff-Appellant, v. LAKE FOREST COUNTRY DAY SCHOOL et al., Defendants (American Airlines, Inc., et al., Defendants-Appellees).

Second District    No. 2—93—0478

Opinion filed May 4, 1994.

Norman Rifkind, of Beigel & Sandler, of Chicago (Laurence M. Landsman, of counsel), for appellant.

Joel H. Kaplan, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Amy P. Hartman, of counsel), for appellees.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, Debra Pearson, brought suit in her capacity as parent and next friend of Phoenix, a 13-year-old girl, against American Airlines (American) for intentional and negligent infliction of emotional distress after American refused to board Phoenix on a flight from Madrid to Dallas at the end of a school-sponsored trip. Plaintiff also sued, individually, American and one of its employees, Steve J. Brno, for defamation, alleging injuries resulting from a letter written by Brno to an employee of the school two months after the incident. Although Lake Forest Country Day School (Lake Forest) and two of its employees were also named as defendants, this appeal involves only plaintiff's claims against American and Brno.

Pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), the circuit court dismissed plaintiff's causes of action against American on the ground that they were preempted by the Federal Aviation Act (42 U.S.C. app. § 1305(a)(1) (1988)). The court also granted Brno's motion to dismiss the defamation claim against him for lack of personal jurisdiction. We vacate the court's ruling with respect to personal jurisdiction over Brno but

affirm the dismissal of plaintiff's causes of action against both Brno and American.

■ We note, preliminarily, that plaintiff's statement of facts is defective. Supreme Court Rule 341(e)(6) provides that the facts shall be "stated accurately and fairly without argument or comment." (134 Ill. 2d R. 341(e)(6).) It is not the least bit helpful to our review, or to plaintiff's cause, that her statement of facts is laden with argument and comment. Supreme court rules pertaining to appellate briefs are not merely suggestions. *First National Bank v. Loffelmacher* (1992), 236 Ill. App. 3d 690.

The facts, when viewed in the light most favorable to plaintiff, can be summarized as follows. Between June 14 and July 4, 1991, Phoenix participated in a trip to Spain offered by Lake Forest Country Day School (Lake Forest) through its Spanish program. The itinerary included arrival at, and departure from, Madrid, Spain. Because Phoenix's mother, the plaintiff, was an international flight attendant with American, Phoenix was entitled to use a pass available to the families of American employees.

Although a priority pass, the "D-1" pass Phoenix was entitled to use does not guarantee a seat on a flight. Pass passengers are required to telephone the airline prior to the day of the flight and have themselves placed on a list for the flight's meal count. Pass passengers put themselves on a stand-by list on the day of the flight, and the decision as to whether a pass passenger can travel on a particular flight depends on the priority level of the pass as well as the pass passenger's position on the stand-by list. Although a pass passenger is, generally, only eligible to fly coach class, a pass passenger 13 years old or older, who is dressed appropriately and for whom a meal is available, could be seated in a business or first class seat if all coach class seats are occupied.

On July 4, 1991, the students and their two chaperons arrived at the Madrid airport. Ann M. Shiras, a teacher at Lake Forest, was not returning with the others and said goodbye to them at the security gate inside the airport. The other supervisor, Larry Ivens, accompanied the students to the departure gate where all the members of the trip except for Phoenix, her roommate, and Ivens boarded a bus to be taken to the aircraft. When the final boarding call was announced, Ivens told Phoenix that American would not permit her on the flight because there were purportedly no unoccupied seats available for her. He then gave Phoenix her passport and boarded the bus with Phoenix's roommate. The plane flew to Dallas with three empty seats.

Left alone in the airport, Phoenix was upset and afraid. An American couple from Dallas, Texas, also flying stand-by and also unable

to get on the flight to Dallas, approached Phoenix and took her to an apartment where the couple was staying. The couple telephoned plaintiff to explain what had happened. The next day, all three flew to Dallas together, where the couple ensured that Phoenix cleared customs and boarded a flight to Chicago.

Plaintiff's complaint alleges that Phoenix suffered extreme emotional distress as a result of her ordeal. According to plaintiff, American breached its duty to Phoenix by, *inter alia*, disregarding its knowledge that Phoenix, a 13-year-old, was left alone at the gate without adult supervision and by failing to allow her to occupy an empty business-class or first-class seat, failing to contact plaintiff, and failing to arrange for Phoenix to board the next flight to Dallas.

On or about September 10, 1991, Brno, acting at all relevant times within the scope and course of his employment by American, wrote a letter to Shiras regarding the incident in Madrid. Brno's letter was purportedly written in response to a letter from Shiras to American. In his letter, Brno made the following statements: "I feel that [Phoenix's] mother did not properly explain to you that anyone travelling on an employee pass is subject to removal for reasons that might not apply to our revenue passengers, and that you should not have left the airport until the plane had taken off and you were assured that she indeed was accommodated"; "I question the employee's judgment in having her daughter travel stand-by out of Madrid during our busy season when her chances of not getting on board were high"; and "I only mention this so as to put the blame where it belongs, not with you, but with the parent."

Plaintiff's complaint alleges that she has suffered emotional distress and mental anguish as a result of the letter, in that her good name has been damaged, her reputation at Lake Forest and in her community has been injured, and she has been exposed to public ridicule.

When proceeding under section 2—619, a movant concedes all well-pleaded facts set forth in the complaint but does not admit conclusions of law. (*Falk v. Martel* (1991), 210 Ill. App. 3d 557, 560-61; *Miranda v. Jewel Cos.* (1989), 192 Ill. App. 3d 586, 588.) In its review, an appellate court may consider admissions in the record and exhibits that are attached to the pleadings. (*Fahey v. State & Madison Property Association* (1990), 200 Ill. App. 3d 437.) While appellate review of the dismissal of a complaint pursuant to a section 2—619 motion is limited to a consideration of the legal questions presented by the pleadings, such review is independent and need not defer to the trial court's reasoning. *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 286; *Miranda*, 192 Ill. App. 3d at 588; *Woodson*

*v. North Chicago Community School District No. 64* (1989), 187 Ill. App. 3d 168, 172.

We address first plaintiff's contention that the trial court erred in ruling that it lacked personal jurisdiction over Brno. The trial court's ruling was based solely on Brno's lack of minimum contacts with the forum State. Plaintiff, however, makes the initial argument that Brno submitted to the court's jurisdiction by participating in the proceedings after filing a special and limited appearance. Counsel for defendants Brno and American counters by arguing that the inclusion of Brno's name on "several pleadings" after he filed the special appearance was a clerical error which the court recognized as such by dismissing plaintiff's claims against Brno for lack of personal jurisdiction based on constitutional due process grounds.

■ Personal jurisdiction is conferred by the service of summons or by a general appearance, and it is derived from the actions of the person sought to be bound. (*In re Estate of Zoglauer* (1992), 229 Ill. App. 3d 394, 397.) Section 301(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—301(a) (now 735 ILCS 5/2—301(a) (West 1992))) provides that a defendant may make a special appearance to object to the court's assertion of personal jurisdiction over him, so long as such appearance is made prior to filing any other pleading or motion. The primary concern of this rule is to prevent a party from simultaneously invoking and denying jurisdiction, the inquiry being whether a party has set forth a defense or has taken other steps in the cause which invoked the jurisdiction of the challenged court. *Supreme Hive Ladies of the Maccabees v. Harrington* (1907), 227 Ill. 511, 525.

Once a defendant enters a special appearance, he is "confined to contesting only the question of jurisdiction; his participation in other aspects of the trial destroys the limitation of his appearance and waives the jurisdictional objection." (*In re Marriage of Falstad* (1987), 152 Ill. App. 3d 648, 653.) Thus, "any action taken by [a] litigant which recognizes the case as in court will amount to a general appearance unless such action was for the sole purpose of objecting to the jurisdiction." *Lord v. Hubert* (1957), 12 Ill. 2d 83, 87; *In re Estate of Zoglauer*, 229 Ill. App. 3d at 397.

■ In the instant case, the sequence of events unfolded as follows. Brno filed a special and limited appearance on October 19, 1992, followed by a motion to dismiss for lack of personal jurisdiction, filed on November 2, 1992. On November 9, 1992, American filed a motion to dismiss pursuant to sections 2—615 and 2—619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619(a)(1) (West 1992)). On January 21, 1993, a reply brief in support of Brno's motion to dismiss

for lack of personal jurisdiction was received by the court, and, on the same date, a reply brief in support of American's and Brno's motion to dismiss was also received by the court. Plaintiff's surreply memorandum, which argued, *inter alia*, that Brno had now waived his special and limited appearance, was received by the circuit court on January 28, 1993. American filed a "motion to correct case caption" on February 2, 1993, requesting the court to amend the reply brief supporting American's motion to dismiss so that it would not include Brno's name in the heading or the closing.

American's motion to correct case caption is unavailing. The reply brief does not merely identify Brno in its heading and closing; it also sets forth a substantive defense to plaintiff's defamation claims against American and Brno, arguing that plaintiff has failed to state a cause of action for either defamation *per se* or defamation *per quod* and concluding that count VII of plaintiff's complaint, which alleges defamation and is directed at both American and Brno, "must be dismissed." The trial court did not amend the reply brief as requested or otherwise rule on American's motion to correct case caption. On the record before us, we are unable to say with certainty that Brno's evident participation in this part of the proceedings was not an "action taken by [a] litigant which recognizes the case as in court." *Lord v. Hubert*, 12 Ill. 2d at 87.

We further note Brno's participation in the discovery process. A plaintiff is permitted to pursue discovery on issues raised in a special appearance, "provided such discovery is limited to the court's jurisdiction over the person of the defendant." (134 Ill. 2d R. 201(*l*); see also *La Salle National Bank v. Akande* (1992), 235 Ill. App. 3d 53, 62-65; *In re Marriage of Falstad*, 152 Ill. App. 3d at 652-55.) Although we have found no case law addressing the precise issue, it is apparent to us that participation in discovery by a defendant who has entered a special and limited appearance must be similarly restricted to issues raised in that appearance; otherwise, he would be in the contradictory position of taking steps in the cause that invoked the jurisdiction of the same court whose jurisdiction he was simultaneously denying. In the instant case, Brno signed a verification statement on January 15, 1993, certifying both his and American's answers to plaintiff's amended interrogatories. The answers Brno caused to be prepared addressed substantive questions regarding the allegedly defamatory letter sent to Shiras.

In moving to dismiss for lack of personal jurisdiction, Brno argued that he lacked minimum contacts with the forum State. However, where a party enters a special appearance questioning the jurisdiction of the court over his person, and thereafter makes a general

appearance, jurisdictional questions raised in the special appearance are deemed to be waived. (*Spencer v. American United Cab Association* (1965), 59 Ill. App. 2d 165, 170.) In light of our finding that Brno's "participation in other aspects of the trial destroy[ed] the limitation of his appearance and waive[d] the jurisdictional objection" (*In re Marriage of Falstad*, 152 Ill. App. 3d at 653), it was error for the trial court to consider further Brno's jurisdictional arguments.

■ Although we find that Brno submitted to the court's jurisdiction, we dismiss plaintiff's defamation claim against Brno for the same reasons, stated below, that we affirm the trial court's dismissal of all of plaintiff's complaints against American.

The trial court ruled that plaintiff's causes of action for negligent and intentional infliction of emotional distress and defamation against American are preempted by the Federal Aviation Act of 1958 (FAA) (§ 105(a)(1), as amended, 49 U.S.C. app. § 1305(a)(1) (1988)). Section 1305(a)(1), the preemption provision added to the FAA by the Airline Deregulation Act of 1978 (ADA), provides in pertinent part:

"[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to rates, routes, or services of any air carrier ***.*" (Emphasis added.) 49 U.S.C. app. § 1305(a)(1) (1988).

In 1992, the United States Supreme Court held that State standards for airline fare advertising were expressly preempted by the ADA. (*Morales v. Trans World Airlines, Inc.* (1992), 504 U.S. 374, 119 L. Ed. 2d 157, 112 S. Ct. 2031.) In reaching its decision, the *Morales* Court focused on defining the scope of "relating to." The Court determined that the phrase "relating to" in the ADA preemption provision should be given the same broad interpretation that the Court has applied under the preemption provision found in the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1144(a) (1988)). The Court explained:

"For purposes of the present case, the key phrase, obviously, is 'relating to.' The ordinary meaning of these words is a broad one— 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed 1979)—and the words thus express a broad pre-emptive purpose. We have repeatedly recognized that in addressing the similarly worded pre-emption provision of [ERISA] [citation], which pre-empts all state laws 'insofar as they ... relate to any employee benefit plan.' We have said, for example, that 'the breadth of [that provision's] pre-emptive reach is apparent from [its] language,' [citation]; that it has a 'broad scope,' [citation],

and an 'expansive sweep,' [citation]; and that it is 'broadly worded,' [citation], 'deliberately expansive,' [citation], and 'conspicuous for its breadth' [citation]. True to our word, we have held that a state law 'relates to' an employee benefit plan, and is pre-empted by ERISA, 'if it has a connection with or reference to such a plan.' [Citation.] Since the relevant language of the ADA is identical, we think it appropriate to adopt the same standard here: State enforcement actions having a connection with, or reference to, airline 'rates, routes, or services' are pre-empted under 49 U.S.C. App. § 1305(a)(1)." *Morales*, 504 U.S. at 383-84, 119 L. Ed. 2d at 167-68, 112 S. Ct. at 2037.

The Court rejected the argument that preemption should be limited to State laws expressly addressing the airline industry: "Besides creating an utterly irrational loophole *** this notion *** ignores the sweep of the 'relating to' language." (*Morales*, 504 U.S. at 386, 119 L. Ed. 2d at 169, 112 S. Ct. at 2038.) The Court noted that it had consistently rejected the same argument in ERISA cases, having held that " '[A] state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.' " *Morales*, 504 U.S. at 386, 119 L. Ed. 2d at 169, 112 S. Ct. at 2038, quoting *Ingersoll-Rand Co. v. McClendon* (1990), 498 U.S. 133, 139, 112 L. Ed. 2d 474, 484, 111 S. Ct. 478, 483.

While the Court concluded that the guidelines regarding airline fare advertising were expressly preempted by section 1305(a)(1), it nonetheless stated that " '[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." (*Morales*, 504 U.S. at 390, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040, quoting *Shaw v. Delta Airlines, Inc.* (1983), 463 U.S. 85, 100 n.21, 77 L. Ed. 2d 490, 503 n.21, 103 S. Ct. 2890, 2901 n.21.) The *Morales* Court found that the issue before it did not present a borderline question, however, and thus declined to comment on where it would be appropriate to draw the line as to the types of actions that would be preempted by section 1305(a)(1).

Given *Morales*' very broad interpretation of "relating to," we believe the State law claims at issue affect airline services directly, because they immediately arise from the denial, or the allegedly inadequate provision, of such services.

Plaintiff maintains that her common-law tort claims against American and Brno are too tenuously or remotely related to American's "services" to be preempted. Plaintiff argues that Phoenix "was wrongfully bumped [from the flight] despite the availability of seating for which she was suitable" and that American failed to

abide by its own standards and duties. It would be impossible for a court to consider these assertions without addressing American's boarding and seating practices.

An airline's boarding and seating policies come within the ambit of the "services" it provides to its customers. (See *Hodges v. Delta Airlines, Inc.* (5th Cir. 1993), 4 F.3d 350, 354 ("[e]lements of the air carrier service bargain include items such as ticketing [and] boarding procedures").) Courts have repeatedly held that State causes of action involving airlines' boarding and seating policies relate to "services" and are, consequently, preempted by Federal law. See, *e.g.*, *O'Carroll v. American Airlines, Inc.*, (5th Cir. 1989), 863 F.2d 11, *cert. denied* (1989), 490 U.S. 1106, 104 L. Ed. 2d 1021, 109 S. Ct. 3158 (State law claims alleging wrongful exclusion from a flight); *Williams v. Express Airlines I, Inc.* (W.D. Tenn. 1993), 825 F. Supp. 831 (false imprisonment claims for being stopped from boarding a flight); *Cannava v. USAir, Inc.* (D. Mass. 1993) WL 565341 (and cases cited therein) (claims, *inter alia*, of breach of contract and intentional infliction of emotional distress arising from an attempt to board a flight, of negligence for allowing a hijacker to board a plane, and of wrongful death arising from airline's actions in assisting an ill passenger with a connecting flight).

In support of her position, plaintiff cites a recent Illinois Supreme Court decision, *Wolens v. American Airlines, Inc.* (1993), 157 Ill. 2d 466. *Wolens* is not only distinguishable on its facts; its reasoning reinforces our conclusion that plaintiff's claims relate to "services."

Revisiting a decision (*Wolens v. American Airlines, Inc.* (1992), 147 Ill. 2d 367) remanded by the United States Supreme Court for further consideration in light of *Morales*, our supreme court addressed whether State court claims for damages arising from retroactive changes in American's frequent flyer program were preempted by section 1305(a)(1). In deciding that question, the court reasoned that a frequent flyer program is not an essential element to the operation of an airline: "[i]ndeed, the airline industry functioned successfully for decades prior to providing incentives to its travelers in the form of frequent flyer programs." (*Wolens*, 157 Ill. 2d at 472.) In view of its finding that frequent flyer programs are "peripheral" to the operation of an airline, the court affirmed its previous holding that the plaintiff's State law claims for money damages were not preempted because they bore "only a tangential, or tenuous, relation to American's rates, routes, and services." *Wolens*, 157 Ill. 2d at 473.

Conversely, boarding and seating practices are not peripheral to the operation of an airline. Therefore, following the supreme court's reasoning in *Wolens*, State law claims such as plaintiff's bear a direct relation to "services" and are preempted by Federal law.

Plaintiff's reliance on *West v. Northwest Airlines, Inc.*, (9th Cir. 1993), 995 F.2d 148, is also misplaced. The plaintiff in that case was bumped from an overbooked flight upon which he held a confirmed reservation. The United States Court of Appeals for the Ninth Circuit determined that the plaintiff's claim for breach of the covenant of good faith and fair dealing was not preempted to the extent it sought compensatory damages. The court expressed its belief that the "state contract and tort laws under which [the plaintiff] seeks relief are within that range of statutes too tenuously connected to airline regulation to trigger preemption." *West*, 995 F.2d at 151.

The *West* court characterized the cause before it as "borderline," however, and turned for guidance to the administrative regulations interpreting the FAA. The court recognized the "controlling authority" of section 250.9(b), which gives bumped passengers holding confirmed reservations the option of declining airline compensation and seeking to recover damages in "a court of law or in some other manner." *West*, 995 F.2d at 151-52, citing 14 C.F.R. § 250.9(b) (1990).

The pleadings in the instant case do not allege that Phoenix held a confirmed reservation or that she was bumped from the flight in Madrid as a result of overselling. Therefore, section 250.9(b) is inapplicable to the case at hand. Since the *West* court's holding evidently relied on the existence of the agency regulation, plaintiff's contention that *West* "mandates reversal" is unpersuasive.

*O'Hern v. Delta Airlines, Inc.* (N.D. Ill. 1993), 838 F. Supp. 1264, another case offered by plaintiff, is also inapposite. In that case, the district court held that a State cause of action alleging safety deficiencies was not preempted by section 1305(a)(1). The court based its holding on a finding that Congress did not intend the term "services" to encompass airline safety, because "safety" was not included in the language of the preemption provision. (*O'Hern*, 838 F. Supp. at 1266-67.) Plaintiff's causes of action, on the other hand, relate to American's "services" and are expressly preempted by the ADA.

Phoenix's inability to board the flight in Madrid and her ensuing ordeal, as well as the allegedly defamatory letter written by Brno two months later, are directly connected to services provided—or, perhaps, not provided—by American. Thus, the facts before us do not present a borderline question of a State action only tenuously, or tangentially, related to airline services.

The dismissal of plaintiff's claims against American and Brno on the ground that they are preempted by the Federal Aviation Act is

238

affirmed. The ruling that the circuit court lacked personal jurisdiction over Brno is vacated.

Affirmed in part; vacated in part.

DOYLE and PECCARELLI, JJ., concur.