TRAVEL ALL OVER THE WORLD,
INC., and Ibrahim Y. Elgindy,
Plaintiffs–Appellants,

v.

The KINGDOM OF SAUDI ARABIA
and Saudi Arabian Airlines,
Defendants–Appellees.

No. 95–1119.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1995.

Decided Jan. 3, 1996.

Fred Speck (argued), Chicago, IL, for Plaintiffs–Appellants.

Michael H. West (argued), Burke, Weaver & Prell, Chicago, IL, for Defendants–Appellees.

Before FLAUM, KANNE, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiffs, Travel All Over the World, Inc. ("Travel All") and Ibrahim Y. Elgindy, sought relief in district court, alleging breach of contract and tortious conduct by the defendants, The Kingdom of Saudi Arabia ("The Kingdom") and Saudi Arabian Airlines ("Saudia"). The defendants filed separate motions to dismiss the plaintiffs' Fourth Amended Complaint ("the complaint"). Saudia asserted that the plaintiffs' claims were preempted by § 105(a)(1) of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C.App. § 1305(a)(1) (Supp.1994). The district court dismissed the complaint on all counts with prejudice on preemption grounds, and the plaintiffs have appealed the

dismissal only with respect to Saudia.[1] For the reasons discussed below, we reverse the district court's judgment and remand for further proceedings.

## I.

■ On appeal of this motion to dismiss for failure to state a claim, we accept as true the factual allegations of the complaint and draw all reasonable inferences in the plaintiffs' favor. *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1343 (7th Cir.1995). Consistent with this approach, we will consider new factual allegations raised for the first time on appeal if such allegations are consistent with the complaint. *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 439–40 (7th Cir.1994).

This dispute arises from an attempt by Travel All, a travel agency, to arrange flights to Saudi Arabia for its clients. In February of 1990, Travel All contracted with Saudia to purchase round-trip airline tickets for approximately 180 clients for an annual religious pilgrimage known as the Haaj. Travel All received confirmed reservations for these clients after meeting various requirements of its contract with Saudia.

Travel All's clients, who were from throughout the United States, planned to rendezvous in New York on June 19, 1990 and then fly to Saudi Arabia via Saudia. Elgindy, the president of Travel All, accompanied Travel All's Chicago contingent on its trip to New York and intended to accompany the entire group of Haaj clients to Saudi Arabia. Saudia was aware that Elgindy was flying into New York to escort the entire group. However, Elgindy and the Chicago clients were delayed by bad weather on their TWA flight into New York, which caused them to miss the departure of the Saudia flight.

In Elgindy's absence, Saudia canceled the confirmed reservations and tickets of the Travel All clients who were in New York and required the clients to repurchase their tickets directly through Saudia. This, in turn, caused Travel All to lose its commissions for the Haaj clients. Travel All's complaint, however, alleges more than the simple cancellation of tickets. Travel All maintains that Saudia's employees made a series of knowingly false verbal and written statements designed to harm the valid business interests of Travel All.[2] Saudia told Travel All's clients that Travel All was not a reputable company, that Travel All had not booked seats on Saudia for many of them, that Travel All often lied to its clients about reserving seats for them, and that Elgindy normally did not accompany passengers and would not be available to handle their problems. Saudia repeated these false statements to Travel All's clients after they arrived in Saudi Arabia and required the clients to re-book their return flights directly through Saudia.

After this lawsuit was filed on June 4, 1991, Travel All continued to attempt to conduct business with Saudia. Travel All wished to mitigate the damage Saudia had caused by recapturing its lost Haaj clients and rebuilding its annual Haaj business. Yet Saudia has intentionally impeded Travel All's endeavors to reconstruct its Haaj business.

The seven counts of plaintiffs' complaint charge breach of contract, tortious interference with a business relationship, defamation, slander, fraud, intentional infliction of emotional distress, and additional tortious interference with a business relationship.[3] Saudia filed a motion to "Dismiss Plaintiffs' Claims Which Involve Complaints Regarding Its Rates, Routes, or Services," arguing that such claims were expressly preempted by the ADA. The district court treated Saudia's motion as a motion to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim. The district court then dismissed the complaint with prejudice, holding that all seven

---

1. The Kingdom's Motion to Dismiss was also granted on all counts. Although the plaintiffs named both defendants in their notice of appeal, they have withdrawn their appeal to reinstate the Kingdom as a defendant. Therefore, this opinion will refer to Saudia as "the defendant."

2. Travel All asserts that Saudia's conduct was motivated by one Saudia employee's personal "vendetta" against Elgindy.

3. The separate count of "additional tortious interference" is based exclusively on Saudia's conduct after this litigation ensued.

counts related to Saudia's rates, routes, or services.

## II.

On appeal, the plaintiffs present three main grounds for reversal. First, they contend that the district court improperly granted a motion to dismiss that neglected to cite a particular rule of procedure and failed to characterize itself as dispositive. Next, they argue that the district court erred by going beyond the "four corners" of the complaint and refusing to accept their well-pled allegations on a 12(b)(6) motion. Finally, the plaintiffs argue that their claims are not preempted by § 1305(a)(1) of the ADA, as interpreted by recent Supreme Court precedent.[4]

### A.

■ The defendant's motion to dismiss argued that the plaintiffs' claims involved Saudia's rates, routes, or services and accordingly were preempted by the ADA. The defendant, however, did not cite any procedural rule as a basis for dismissal. Furthermore, the motion did not indicate that it was intended to be dispositive; in fact, the defendant acknowledged in the motion's reply brief that perhaps the case was not developed enough to consider the motion fully dispositive. At oral argument the plaintiffs seized upon these facts to contend that the district court improperly dismissed all of their claims with prejudice. However, in their appellate briefs, the plaintiffs raise this argument only perfunctorily and cite no authority in support of their position. We therefore deem this argument waived. *Thompson v. Boggs*, 33 F.3d 847, 856 (7th Cir.1994), *cert. denied,* ── U.S. ──, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995).

■ In any event, we find no merit in the plaintiffs' position. The Federal Rules should be construed liberally to promote justice. Consistent with this liberal approach, a motion to dismiss does not necessarily need to specify the Federal Rule of Civil Procedure under which it is made. *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 158 (1st Cir.1977). Similarly, nowhere do the Federal Rules require a motion to be labelled "dispositive." The district court may look beyond the technical nomenclature of motions to dismiss to reach the substance of the movant's contentions. *See Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir.1992) (holding that district court properly treated 12(b)(1) motion that indirectly attacked merits of plaintiff's claim as 12(b)(6) motion); *Snyder v. Smith*, 736 F.2d 409, 419 (7th Cir.1984) (overlooking erroneous labelling of motion to dismiss), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Regardless of how Saudia labelled its motion, the plaintiffs were certainly aware that the district court could dismiss their claims with prejudice. Saudia clearly argued in the motion that the plaintiffs' claims were expressly preempted by the ADA. The plaintiffs responded to the merits of this argument before the district court. In fact, the plaintiffs' response indirectly acknowledged that they were facing dismissal for failure to state a claim by citing the standard for reviewing a 12(b)(6) motion—all of the plaintiffs' well-pleaded facts should be taken as true.[5] The defendant's reply then recognized that perhaps it was premature to consider the motion fully dispositive but still sought dismissal of any and all claims related to Saudia's rates, routes, or services. In this situation, we find that the district court was not procedurally precluded from dismissing the plaintiffs' claims.

### B.

■ We review the district court's grant of the 12(b)(6) motion *de novo,* accepting all the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiffs. *City Nat'l Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir.1994). Dismissal is proper only where it appears

---

4. The plaintiffs also argued in their opening brief that they were entitled to a jury trial but withdrew this argument in their reply brief.

5. Plaintiffs urged that the district court, when considering the motion to dismiss, must "concede[ ] all well-pleaded facts set forth in the Complaint."

beyond a doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1343 (7th Cir.1995). The plaintiffs contend that the district court improperly relied on a joint status report, which was drafted by the defendant, and thereby failed to draw all reasonable inferences in the plaintiffs' favor. Indeed, if the district court considers matters outside the pleadings in connection with a motion to dismiss, it must treat the motion as one for summary judgment. Fed.R.Civ.P. 12(b); *Fleischfresser v. Directors of Sch. Dist. 200,* 15 F.3d 680, 684 (7th Cir.1994). Failure to treat such a motion as one for summary judgment and provide the litigants with notice and an opportunity to respond can constitute reversible error. *R.J.R. Services, Inc. v. Aetna Casualty & Sur. Co.,* 895 F.2d 279, 281 (7th Cir.1989). The district court did not convert the motion to dismiss into a motion for summary judgment; therefore, any reliance by the district court on the joint status report would have been erroneous.[6] It is unclear from the district court's opinion if it actually relied on the joint status report in deciding to dismiss the plaintiffs' claims. Yet even if the district court inappropriately relied on matters outside the pleadings, we will affirm the dismissal if the Rule 12(b)(6) standards are met without reference to the extrinsic material. *In re Wade,* 969 F.2d 241, 249 (7th Cir.1992). Thus, we must determine if the plaintiffs can prove any set of facts that would entitle them to relief.

### C.

■ We are called upon to interpret whether the ADA's express preemption provision encompasses the plaintiffs' common law claims. When the ADA was enacted in 1978, Congress included a preemption clause, which provided in relevant part:

> No State ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier....

49 U.S.C.App. § 1305(a)(1) (Supp.1994).[7] The ADA incorporated this preemption provision so that "[s]tates would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines,* 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992). The Congressional intent to preempt state law should be the ultimate touchstone in our preemption analysis. *Id.* at 381–83, 112 S.Ct. at 2036. Thus, we "must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993).

■ The Supreme Court has crafted two lenses through which we must focus our examination into the scope of the ADA's preemption provision. In *Morales,* the Supreme Court interpreted the phrase "relating to" expansively: "The ordinary meaning of these words is a broad one—'to stand in relation; to have bearing or concern; to pertain; refer; to bring in association with or connection with,' ... and the words thus express a broad preemptive purpose." *Morales,* 504 U.S. at 384, 112 S.Ct. at 2037. Thus, the Court concluded that "State enforcement actions having a connection with or reference to airline 'rates, routes or services' are pre-

---

**6.** The joint status report is certainly not a pleading. Saudia argues that the joint status report is a matter of public record, of which the district court may take judicial notice without converting the motion to dismiss into a summary judgment motion. *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994). Unlike the existence of a recorded judgment in *Henson,* however, the plaintiffs' "admissions" in the joint status report are not proper matters for judicial notice. To hold otherwise would render Rule 12(b)'s proscription against considering matters outside the pleadings nugatory.

**7.** In 1994 Congress amended the preemption clause to read:

> [A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier ...

49 U.S.C.A. § 41713(b)(1) (1995). However, Congress intended the amendment to make no substantive change. Pub.L. 103–272, § 1(a), 108 Stat. 745; *see American Airlines, Inc. v. Wolens,* —— U.S. ——, —— n. 1, 115 S.Ct. 817, 821 n. 1, 130 L.Ed.2d 715 (1995).

empted...." *Id. Morales* reasoned that the "relating to" language of the ADA was identical to that in ERISA's preemption provision, 29 U.S.C. § 1144(a), which previously had been interpreted to preempt state laws that have "a connection with or reference to" an employee benefit plan. *Id.*

*Morales* held that the specific guidelines at issue, which addressed fare advertising and were enforceable through a state's general consumer protection laws, were preempted by the ADA. *Id.* at 387–89, 112 S.Ct. at 2039. The Court found it irrelevant that the consumer protection laws were not specifically directed at the airline industry. *Id.* at 385–87, 112 S.Ct. at 2038. Instead, the Court reasoned that, because the guidelines expressly referred to air fares, "[o]ne cannot avoid the conclusion that ... the guidelines 'relate to' airline rates." *Id.* at 388, 112 S.Ct. at 2039. Alternatively, *Morales* found that even if the guidelines were considered to refer to the *advertising* of fares, and not directly to fares, such restrictions on advertising would "have the forbidden significant [economic] effect upon fares." *Id.* Thus, the Court found that "compelling or restricting 'price advertising surely "relates to" price.'" *Id.* (quoting *Illinois Corporate Travel v. American Airlines, Inc.*, 889 F.2d 751, 754 (7th Cir.1989), *cert. denied*, 495 U.S. 919, 110 S.Ct. 1948, 109 L.Ed.2d 311 (1990)).

The *Morales* Court expressly limited the reach of its holding:

> [W]e do not ... set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising (for example, state laws preventing obscene depictions) would similarly "relate to" rates; the connection would obviously be far more tenuous....
> "[S]ome state actions may affect airline fares in too tenuous, remote, or peripheral a manner" to have preemptive effect.

*Id.* at 390, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). Thus, state actions that affect airline rates, routes, or services in too tenuous, remote or peripheral a manner are not expressly preempted by the ADA.

The Supreme Court next discussed the scope of the ADA's preemption clause in *American Airlines, Inc. v. Wolens*, —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In that case the plaintiffs were members of American Airlines' frequent flier program who challenged certain program modifications that devalued credits the members had already earned. The plaintiffs contended that these cutbacks violated the Illinois Consumer Fraud and Deceptive Business Practices Act and constituted a breach of contract. *Id.* at ——, 115 S.Ct. at 822.

The *Wolens* Court did not hesitate to find that the "plaintiffs' claims relate to 'rates,' *i.e.*, American's charges in the form of mileage credits for free tickets and upgrades, and to 'services,' *i.e.*, access to flights and class-of-service upgrades ..." *Id.* at ——, 115 S.Ct. at 823. The Court held, however, that a state must also "enact or enforce" a law for such a law to be preempted by the ADA. *Id. Wolens* then distinguished between the plaintiffs' claims under the Illinois Consumer Fraud Act and the plaintiffs' claims for breach of contract. The Court held that the ADA expressly preempted the Illinois Consumer Fraud Act claims:

> The [Illinois Consumer Fraud] Act is prescriptive; it controls the primary conduct of those falling within its governance ...
> ... [the] Act serves as a means to guide and police the marketing practices of the airlines; the Act does not simply give effect to bargains offered by the airlines and accepted by airline customers.

*Id.* In contrast, the Court held that a state does not "enact or enforce any law" by enforcing private agreements:

> We do not read the ADA's pre-emption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings.... [T]erms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's enactment or enforcement of any law".... A remedy

confined to a contract's terms simply holds parties to their agreements.

*Id.* at ——, 115 S.Ct. at 824. Thus, *Morales* and *Wolens* allow us to discern two distinct requirements for a law to be expressly preempted by the ADA: (1) A state must "enact or enforce" a law that (2) "relates to" airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them.

### 1. Breach of Contract Claim

■■■ The plaintiffs argue that, in light of *Wolens,* which was decided after the district court's decision, the district court erred when it dismissed their claim for breach of contract. Indeed, *Wolens* compels us to conclude that the plaintiffs' breach of contract claim is not preempted by § 1305(a)(1). The plaintiffs claim that Saudia breached its agreement with Travel All to honor the confirmed reservations of Travel All's clients. Thus, as in *Wolens,* the plaintiffs here are not alleging a violation of state-imposed obligations, but rather are contending that the airline breached a self-imposed undertaking. The terms and conditions in the contract between Travel All and Saudia are "privately ordered obligations" and therefore "do not

amount to a State's enactment or enforcement of any law." *Wolens,* —— U.S. at ——, 115 S.Ct. at 824. The plaintiffs' claim for compensatory relief for breach of contract is therefore not expressly preempted by the ADA.[8]

■■■ Saudia's attempt to distinguish *Wolens* is unavailing. Saudia argues that the contract claims in *Wolens* were based on American Airlines' unregulated frequent flyer program, while the contract claims here are based on Saudia's heavily regulated "bumping" practices. Saudia asks us to read "privately ordered obligations" as encompassing only those obligations outside the purview of federal regulation of rates, routes, or services. Yet *Wolens* did not distinguish between various types of contracts; the Court limited its analysis to the question of whether a state's enforcement of private contracts amounted to an "enactment or enforcement of any law." *Id.* at ——, 115 S.Ct. at 824. We see no reason to distinguish *Wolens* based on the mere existence of "bumping" regulations. The question of whether a State has "enacted or enforced a law" cannot depend on the existence of federal regulations in the same area.[9]

8. We recognize that the plaintiffs' breach of contract claim also contains a request for punitive damages. *Wolens* noted that "some state-law principles of contract law ... might well be preempted to the extent they seek to effectuate the State's public policies, rather than the intent of the parties." —— U.S. at —— n. 8, 115 S.Ct. at 826 n. 8 (quoting Brief for United States as *Amicus Curiae* ). Rather than merely holding parties to the terms of a bargain, punitive damages represent an "enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement." *Id.* at ——, 115 S.Ct. at 826. Thus, *Wolens* suggests that the claim for punitive damages is preempted by the ADA, provided that it relates to airline rates, routes or services. The breach of contract claim clearly relates to Saudia's failure to provide its services, *i.e.,* transportation, to Travel All's clients in accordance with its agreement with Travel All. Therefore, we conclude that the ADA preempts the plaintiffs' claim for punitive damages. Furthermore, we do not foreclose the possibility that, upon remand and further development of the case, the district court may find that the plaintiffs are relying on principles of contract law that do not "seek to effectuate ... the intent of the parties," which could be open to preemption under *Wolens.*

9. Although the existence of federal regulations is irrelevant to interpreting the express preemption clause of the ADA, we note that such federal regulations could lead to implied preemption of state law claims. The existence of an express preemption clause supports an inference that the federal statute's preemptive sweep is limited to the express terms of the clause, but it "does not mean that the express clause entirely forecloses any possibility of implied preemption." *Freightliner Corp. v. Myrick,* —— U.S. ——, ——, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995). We will imply preemption where state law conflicts with or frustrates the purpose of statutorily authorized agency regulations. *City of New York v. Federal Communications Comm'n,* 486 U.S. 57, 64, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). Saudia concludes that because the regulations at 14 C.F.R. Pt. 250 allow breach of contract claims by confirmed passengers who were bumped, these regulations preempt breach of contract claims by travel agencies whose clients were bumped. *See* 14 C.F.R. § 250.9. However, Saudia has failed to demonstrate a conflict between these regulations and state laws that allow travel agencies to sue for an independent breach of contract by an airline.

## 2. Slander/Defamation Claims

 The plaintiffs next argue that the district court erred in concluding that their slander and defamation claims "relate to" airline rates, routes, or services.[10] We note that courts have reached divergent results regarding whether claims for slander and defamation are preempted by the ADA under *Morales*. *Compare Fenn v. American Airlines, Inc.*, 839 F.Supp. 1218, 1223 (S.D.Miss. 1993) (finding specific claims for slander unrelated to airline "services") *with Chukwu v. Board of Directors British Airways*, 889 F.Supp. 12, 14 (D.Mass.1995) (finding specific claims for slander related to airline "services") *and Pearson v. Lake Forest Country Day Sch.*, 262 Ill.App.3d 228, 199 Ill.Dec. 324, 329–30, 633 N.E.2d 1315, 1320–21 (1994) (same). *Morales* does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA. Instead, we must examine the underlying facts of each case to determine whether the particular claims at issue "relate to" airline rates, routes or services.

 Only those tort claims that refer to or have a connection with airline rates, routes, or services can be preempted by the ADA. *Morales*, 504 U.S. at 383–85, 112 S.Ct. at 2037. In this case, the claims of slander and defamation arise directly from Saudia's allegedly false statements about Travel All and Elgindy. According to the plaintiffs' complaint, Saudia falsely told Travel All's clients that Travel All was not a reputable company, that Travel All had not booked seats for them, that Travel All often lied to its clients about booking seats, and that Elgindy would not be available to help them. These statements, although they refer to *Travel All's* services, certainly do not refer to *Saudia's* rates, routes, or services—in fact, these statements do not refer to Saudia at all. Moreover, the statements themselves are not "services" provided by Saudia within the meaning of the ADA. We adopt the following Fifth Circuit definition of "services":

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another.... [This] leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.

*Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (en banc). Certainly, Saudia's false statements regarding Travel All's services were not part of any contractual arrangement that Saudia had with Travel All or its clients. Thus, the slander and defamation claims do not expressly refer to airline rates, routes, or services. In addition, these claims do not have the "forbidden significant [economic] effect" on airline rates, routes, or services, as contemplated by *Morales*. It is difficult for us to envision how allowing tort claims based on an airline's knowingly false statements about a travel agency would have even a "tenuous, remote or peripheral" economic effect on the rates, routes, or services that the airline offers. Despite Saudia's contention to the contrary, the plaintiffs' claims are simply not analogous to claims that we have previously held preempted by the ADA. *See Statland v. American Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir.1993) (finding claims based on airline's withholding portion of federal tax on canceled tickets related to rates), *cert. denied*, —— U.S. ——, 114 S.Ct. 603, 126 L.Ed.2d 568 (1993); *Illinois Corp. Travel*, 889 F.2d at 754 (finding claims based on airline's refusal to permit travel agency to advertise discounted prices related to rates). We conclude that the plaintiffs' claims of slander and defamation are not "related to" Saudia's rates, routes, or services, and are therefore not preempted by § 1305(a)(1) of the ADA.

10. Saudia argues that the plaintiffs waived this argument by not analyzing *Morales* and its progeny until their reply brief. *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 666 (7th Cir. 1995). Although their opening brief was not a model of organization, the plaintiffs clearly argued, as they had in the district court, that their claims were not preempted because they were not related to airline rates, routes, or services. Thus, the plaintiffs have not waived this argument.

### 3. The Other Intentional Tort Claims

██ The plaintiffs also allege tortious interference, intentional infliction of emotional distress, and fraud on the part of the defendant. These claims are partially based on the same slanderous and defamatory comments that we found not preempted under the preceding analysis. As this case is before us on a 12(b)(6) motion, we must determine whether the plaintiffs can prove any set of facts that would entitle them to relief. *Lashbrook,* 65 F.3d at 1343. Thus, because the plaintiffs' claims could withstand scrutiny if they were based on the slanderous and defamatory comments alone, we must reverse the decision of the district court with respect to these claims. We recognize, however, that these intentional tort claims also are based, at least in part, on Saudia canceling the confirmed tickets of Travel All's clients and requiring these clients to purchase their tickets directly through Saudia. The following analysis applies to these claims to the extent that they rely on this conduct of Saudia rather than Saudia's allegedly slanderous and defamatory comments, and is included to assist the district court in its determinations upon remand. After further development of the factual underpinnings of the claims, the district court will then be able to make definitive rulings on which claims are preempted.

██ In contrast to the claims for slander and defamation, the intentional tort claims expressly refer to airline "services," which include ticketing as well as the transportation itself. *Hodges,* 44 F.3d at 336. These tort claims are based on the airline's refusal to transport passengers who had booked their flights through Travel All. Such tort claims clearly "relate to" the airline's provision of services. *See Wolens,* —— U.S. at ——, 115 S.Ct. at 823 (finding claims based on an airline's frequent flier reward cutbacks related to airline services because they involved "access to flights"); *Williams v. Express Airlines, I, Inc.,* 825 F.Supp. 831, 833 (W.D.Tenn.1993) (finding false imprisonment claim based on airline's refusal to board passenger related to airline service); *Pearson,* 199 Ill.Dec. at 329–30, 633 N.E.2d at 1320–21 (finding tort claims based on airline's refusal to transport plaintiff directly connected to airline services).[11]

██ The plaintiffs argue that their claims cannot be preempted because the actions of Saudia were not taken in the normal exercise of its business judgment, but were part of a vengeful and ongoing course of conduct designed to harm the business interests of the plaintiffs. Yet the proper examination under *Morales* is not why the airline refused to provide its services, but whether the claims at issue either expressly refer to the airline's services (which they clearly do) or would have a significant economic effect on the airline's services. 504 U.S. at 387–89, 112 S.Ct. at 2039. The subjective motivations of Saudia's employees are irrelevant to determining what constitutes "services" within the meaning of the ADA. Under our approach, "services" include all elements of the air carrier service bargain. *See Wolens,* —— U.S. at ——, 115 S.Ct. at 823, (holding that "services" include matters unessential as well as matters essential to airline operations). Certain actions taken by airline personnel (e.g., a flight attendant assaulting a passenger) are undoubtedly not "services," but only because, objectively speaking, they are not part of any contractual arrangement with the airline. The crucial inquiry is the underlying nature of the actions taken, rather than the manner in which they are accomplished.[12]

**11.** The Ninth Circuit's decision in *West v. Northwest Airlines, Inc.,* 995 F.2d 148, 151 (9th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994), is inapposite. *West* involved tort claims based on a passenger being bumped from a flight due to overselling. In holding that the passenger's state tort claims for compensatory relief were not preempted, the *West* court relied heavily on DOT regulations that explicitly allowed bumped passengers to seek relief in court. Although we do not opine whether *West* was correctly decided in light of *Morales,* we note that the DOT regulations do not contemplate travel agencies seeking similar relief.

**12.** We therefore decline to travel down the path paved by *Smith v. America West Airlines, Inc.,* 44 F.3d 344, 346–47 (5th Cir.1995) (en banc), which found that boarding decisions motivated by an airline's "economic" concerns, as opposed to an airline's "safety" concerns, were preempted.

The plaintiffs also argue that *Wolens* has liberated all common law claims from the ADA's preemptive scope, but *Wolens* did not distinguish between common law and statutory claims. Rather, it distinguished between states enforcing private contracts and imposing their own substantive standards external to those contracts. —— U.S. at ——, 115 S.Ct. at 826. States can impose their own substantive standards through the common law as well as through statutory enactments.[13] *Wolens* did not intend to overrule the long line of cases that have found various common law claims preempted by the ADA. *See, e.g., Illinois Corp. Travel,* 889 F.2d at 754; *West v. Northwest Airlines, Inc.,* 995 F.2d 148, 151 (9th Cir.1993). We recognize that the plaintiffs' intentional tort claims are based on the same underlying conduct as the their contract claim, which is not preempted by § 1305(a)(1). However, while *Wolens* protects contract claims that seek to enforce private agreements from preemption, it does not similarly shelter tort claims. The intentional tort claims therefore constitute the "enactment or enforcement" of a law. Moreover, to the extent that the intentional tort claims are based on Saudia's refusal to transport passengers who had booked their flights through Travel Ali, such claims "relate to" Saudia's services and are preempted by the ADA. Yet because we cannot determine at this stage of the proceedings if the plaintiffs' claims are solely based on Saudia's slanderous and defamatory comments, we reverse the decision of the district court with respect to these claims.

## III.

For the foregoing reasons, we REVERSE the order of the district court, which dismissed the complaint on all counts, and REMAND the case for further proceedings consistent with this opinion.

---

13. In fact, *Wolens* acknowledged this by noting that "[s]ome state-law principles of contract law ... might well be preempted to the extent they seek to effectuate the State's public policies...." —— U.S. at ——, 115 S.Ct. at 826 n. 8 (quoting Brief for United States as *Amicus Curiae*).