**Walter L. WILLIAMS Sr., and Eddie W. Levert, Plaintiffs,**

v.

**MIDWEST AIRLINES, INC., Defendant.**

No. 03–C–0903.

United States District Court, E.D. Wisconsin.

June 9, 2004.

Roy L. Williams, for Plaintiffs.

Emery Harlan, R. Jeffrey Krill, Angela McKenzie, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs Walter L. Williams Sr. and Eddie W. Levert commenced this action in state court alleging that agents of defendant Midwest Express Airlines ("Midwest")[1] "intentionally and unlawfully removed" them from an airplane "without just cause." (Compl.¶ 15.) Midwest removed the case to this court arguing that plaintiffs' state law claims were completely preempted by the Airline Deregulation Act ("ADA"), thus giving rise to federal question jurisdiction, and that diversity jurisdiction also existed. In earlier decisions, I rejected defendant's argument that the ADA completely preempted plaintiffs' state law claims and thus created federal question jurisdiction, *Williams v. Midwest*

---

1. Plaintiffs originally named various other Midwest-related entities and individuals as defendants but have since dropped them from the case.

*Express Airlines, Inc.*, 315 F.Supp.2d 975 (E.D.Wis.2004), but found that removal based on diversity of citizenship was proper, *Williams v. Midwest Express Airlines, Inc.*, No. 03–C–0903 (E.D.Wis. May 25, 2004). Pursuant to Fed.R.Civ.P. 12(b)(6), defendant now moves to dismiss the complaint.

## I. FACTS

Plaintiffs allege that they are members of a band known as the O'Jays. (Compl.¶ 8.) The O'Jays are an African–American vocal group, and plaintiffs, who are both over sixty years of age, have been performing in it for over forty years.[2] Plaintiffs allege that they purchased tickets on an August 4, 2001 flight from Milwaukee to New York City, where they were to perform a concert, and that they arrived at Mitchell International Airport for the purpose of boarding the flight. They allege that, while Williams and other members of the O'Jays were waiting in line at the Midwest ticket counter, Levert joined them but was informed by the ticket counter clerk that he had to go to the back of the line. Plaintiffs allege that subsequently the clerk allowed another man to skip in line and said that she did this because he was traveling with his son.

Plaintiffs allege that after he entered the plane, Williams was falsely accused of staring at a flight attendant and asked to leave the plane. Williams and Levert further allege that they exited the plane and were met by two deputies and a dog and informed that they had been removed from the flight because the flight attendant felt that Williams was staring at her, which made her uncomfortable. Plaintiffs allege that since the August 4, 2001 incident, they

have been harassed on flights, continuously searched, given tickets marked "SSSSSSS," which they believe has caused them to be searched, and suffered anguish, shame and humiliation.

## II. STANDARD OF REVIEW

■ Under Fed.R.Civ.P. 12(b)(6), a complaint, or portion thereof, must be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff cannot adduce any set of facts that would entitle him to relief consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In reviewing a complaint under this standard, the court accepts as true the plaintiff's allegations, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), and construes the pleadings in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). It is not necessary for a plaintiff to identify in the complaint the legal theories on which he intends to proceed. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002).

## III. DISCUSSION

Defendant argues that plaintiffs' state law tort claims are preempted by the ADA. The ADA was enacted as part of an effort to encourage market competition in the airline industry. Susan J. Stabile, *Preemption of State Law by Federal Law: A Task for Congress or the Courts?*, 40 Vill.

---

**2.** Pursuant to Fed.R.Evid. 201, I take judicial notice of the above information about the O'Jays. Such information is available on numerous websites. *See, e.g.*, The O'Jays, MusicWeb Encyclopaedia of Popular Music, at http:// www.musicweb.uk.net/encyclopae-dia/o/O15.HTM (last visited May 21, 2004);MCA Records, The O'Jays Biography, at http://www.mcarecords.com (Oct. 23, 2001); Deanna R. Adams, The O'Jays, at http://www.esquirerecords.com/artists/fea-ture/OJays.asp (last visited May 26, 2004).

L.Rev. 1, 38 (1995). Congress attempted to guarantee that states would not interfere with the deregulation process by including in the statute the following preemption provision: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). This broadly-worded provision has resulted in a great deal of litigation and generated a large and often contradictory body of case law, which in turn has generated much commentary and criticism. *See, e.g.,* Ryan L. Bangert, *When Airlines Profile Based on Race: Are Claims Brought Against Airlines Under State Anti–Discrimination Laws Preempted by the Airline Deregulation Act?,* 68 J. Air L. & Com. 791, 797–98 (2003); Sue Haverkos, *Crash & Burn—The Airlines' Preemption Defense Goes Down in Flames, American Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), 64 U. Cin. L.Rev. 1141 (1996); John T. Houchin, *Harris v. American Airlines: Flying Through the Turbulence of Federal Preemption & the Airline Deregulation Act,* 51 U. Miami L.Rev. 955, 967–74 (1997), David H. Rosenthal, *Legal Turbulence: The Courts' Misconstrual of the Airline Deregulation Act's Preemption Clause and the Effect on Passengers' Rights,* 51 Duke L.J. 1857, 1869 (2002).

The Supreme Court has twice ruled on questions involving ADA preemption. In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Court held that the ADA preempted "state enforcement actions having a connection with, or reference to, airline rates, routes or services." In *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 228, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Court indicated that certain breach of contract claims based on state common law were not preempted by the ADA, concluding that when read together with its provi-

sion preserving existing common law and statutory remedies, the ADA preemption provision "stops states from having their own substantive standards with respect to rates, routes or services," but does not preclude relief to a party who proves that an airline violated a contractual term to which it agreed. Bangert, *supra,* at 796 (quoting *Wolens,* 513 U.S. at 232, 115 S.Ct. 817).

Whether plaintiffs' state tort claims are preempted depends on whether they are connected to Midwest's "rates, routes or services." Possibly the most divisive controversy generated by *Morales* and *Wolens* has been the disagreement about the proper definition of the word "services." Bangert, *supra,* at 797–98. Some courts have defined the word narrowly based on their view that Congress intended only to preempt state laws and lawsuits that would adversely impact the economic deregulation of the airline industry and the concurrent promotion of market competition. *See, e.g., Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259 (9th Cir. 1998). Other courts have defined "services" broadly, stating that the word refers to a

> bargained-for or anticipated provision of labor from one party to another.... [This] leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.

*Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995) (en banc). The Seventh Circuit has adopted the broad definition announced in *Hodges. See Travel All Over the World v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1432 (7th Cir.1996); *see also United Airlines, Inc. v. Mesa*

*Airlines, Inc.,* 219 F.3d 605, 607 (7th Cir. 2000) (stating that a state law claim is preempted if it expressly refers to an air carrier's services or would have a significant economic effect on them).

■ Thus, in *Travel All Over the World,* the court held that to the extent that plaintiff's state law tort claims were based on the airline's cancellation of confirmed tickets, the claims expressly referred to the airline's "services," which included both ticketing and the transportation itself. 73 F.3d at 1434 (citing *Hodges,* 44 F.3d at 336). The claims also "related to" the airline's provision of services. *Id.* (citing *Williams v. Express Airlines I, Inc.,* 825 F.Supp. 831, 833 (W.D.Tenn.1993) (finding that claim based on airline's refusal to board a passenger related to airline service)). In the present case, plaintiffs' state law tort claims are based on Midwest's alleged wrongful refusal to transport passengers. Thus, under *Travel All Over the World,* plaintiffs' tort claims clearly relate to airline services and are preempted by the ADA.[3]

However, the fact that plaintiffs' state law tort claims are preempted does not mean that plaintiffs' complaint must be dismissed. As previously stated, a plaintiff is not required to identify in a complaint the legal theories on which he or she intends to proceed. *Higgs,* 286 F.3d at 439. In the present case, construing the complaint in the light most favorable to the plaintiffs, their allegations may give rise to a number of claims. These include a state law breach of contract claim; claims under federal anti-discrimination statutes such as 42 U.S.C. § 1981 (prohibiting discrimina-

tion in the making or enforcing of contract), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) (prohibiting discrimination by recipients of federal funding on account of race or national origin) and 49 U.S.C. § 40127 (prohibiting air carriers from discriminating on the basis of race, color, national origin, sex or ancestry); and a claim under 49 U.S.C. § 44902 (defining when an airline may refuse to transport a ticket-holder). Under *Wolens,* a state law breach of contract claim is not preempted. This is so because Midwest's agreement to transport plaintiffs to New York City was a self-imposed undertaking, and plaintiffs' attempt to enforce it does not involve the enforcement of any state law. *Travel All Over the World,* 73 F.3d at 1432 (citing *Wolens,* 513 U.S. at 229, 115 S.Ct. 817). "A remedy confined to a contract's terms simply holds parties to their agreements." *Wolens,* 513 U.S. at 229, 115 S.Ct. 817.[4] Further, any claims that plaintiffs might have under federal law are not preempted.

## IV. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendant's motion to dismiss is **GRANTED** with respect to plaintiffs' state law tort claims, and those claims are, accordingly, **DISMISSED.**

**IT IS FURTHER ORDERED** that a telephonic scheduling conference will be held on **June 24, 2004 at 2:30 p.m.** to

---

**3.** Because plaintiffs' state law tort claims are preempted, I need not address defendant's argument based on the economic loss doctrine.

**4.** However, to the extent that plaintiffs seek punitive damages in connection with their state law breach of contract claim, that claim

is preempted. *See Travel All Over the World,* 73 F.3d at 1432 n. 8 (quoting *Wolens,* 513 U.S. at 233, 115 S.Ct. 817) (stating that "[r]ather than merely holding parties to the terms of a bargain, punitive damages represent an 'enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement' ").

schedule plaintiffs' remaining claims. The court will initiate the call.