**DELTA AIR LINES, INC. and Al Perez, Petitioners,**

v.

**Robert C. BLACK, Respondent.**

No. 02–0255.

Supreme Court of Texas.

Argued Jan. 15, 2003.

Decided Sept. 11, 2003.

Dan K. Horn, John G. Sams, Don Rynn Freiling, John M. Weaver, Maloney Bean Horn & Hull, P.C., Irving, for Petitioner.

Ronald E. Harden, Dorothy J. Harden, Law Offices of Ronald E. Harden, Kaufman, for Respondent.

Justice JEFFERSON delivered the opinion of the Court.

We grant Robert C. Black's motion for rehearing in part. We withdraw our opinion of June 26, 2003 and substitute the following in its place.

The Airline Deregulation Act of 1978(ADA) provides that states "may not enact or enforce a law ... related to a price, route, or service of an air carrier...." 49 U.S.C. § 41713(b)(1). This case concerns the scope of this preemption provision, specifically, its application to state breach of contract and misrepresentation claims challenging an airline's ticketing and boarding procedures. The trial court rendered summary judgment in favor of Delta Airlines, Inc. and its gate supervisor, Al Perez, without specifying the grounds. The court of appeals reversed, holding that the ADA did not preempt Black's claims, and remanded the case for trial. —— S.W.3d ——, ——. We granted Perez and Delta's petition for review to decide whether the ADA preempts a passenger's state law claims for an airline's alleged failure to honor a confirmed first-class seat. 46 Tex. Sup.Ct. J. 14 (Oct. 10, 2002). We hold that it does and accordingly reverse the court of appeals' judgment in part and render judgment that Black take nothing on his claims against Delta and Perez.

## I

## BACKGROUND

On June 23, 1995, Robert Black purchased two Delta airline tickets for travel from Dallas/Fort Worth to Las Vegas leaving that afternoon and returning on June 25. The invoice from Black's travel agent showed two first-class reservations for Black and his wife. Although the invoice assigned Black first-class seats for both directions, his wife had an assigned seat only for the return flight. Black's travel agent and manager of Smith Travel & Limousine, Melissa Shinn, suggested that Black ask the Delta gate agent if he and his wife could sit together in first class for the Dallas to Las Vegas flight.

Upon arrival at the departure gate, Black requested adjacent seats in first class. The gate agent said that he would "see what [he] could do." As other passengers boarded the plane, a Delta gate supervisor, Al Perez, appeared and informed Black that he and his wife did not have two confirmed first-class seats for the flight. While Delta had a confirmed first-class seat for Mr. Black, it only had a confirmed coach seat for his wife, whom Delta placed on a priority waiting list for first class. Perez told Black that, unless a first-class passenger relinquished a seat, Black's wife would be seated in coach for the three-hour flight from Dallas to Las Vegas. This would not, however, affect her first-class seat for the return flight. At Black's request, Perez spoke by telephone with Shinn. Shinn told Perez that her computer showed two confirmed first-class seats from Dallas to Las Vegas. Delta's computers, however, did not show a confirmed first-class seat for Black's wife.

Unable to provide Black's wife with first-class accommodations, Delta offered several alternatives: (1) the Blacks could sit in coach on their scheduled flight, (2) they could fly separately on the scheduled flight, one in coach and one in first class, (3) they could fly first class on a later flight to Los Angeles and then connect to Las Vegas, or (4) they could take a direct flight later that day to Las Vegas with confirmed first-class seats. Each of these alternatives included free travel vouchers, which Black asserts could be used only for

coach seats. Black declined Delta's offers. Instead, the Blacks drove to Love Field airport and chartered a private jet to and from Las Vegas at a cost of $13,150, which included the aircrew's expenses in Las Vegas for two days.

Black sued Delta for breach of contract and intentional and negligent misrepresentation, and sued Perez for misrepresentation only.[1] Delta and Perez moved for summary judgment on four grounds: (1) preemption under the ADA, (2) Black's failure to mitigate damages, (3) lack of causation, and (4) lack of an agency relationship between Smith Travel and Delta. The trial court granted summary judgment for Delta and Perez, without specifying the grounds. Black appealed the judgment.

The court of appeals reversed the trial court's judgment and remanded the case for trial. The court of appeals held that fact issues precluded judgment as a matter of law on the causation, mitigation, and agency issues. —— S.W.3d at ——. As to the key issue before this Court, the court of appeals held that Black's claims were not preempted by the ADA because "federal airline regulations allow passengers whose reservations are not honored due to overbooking to seek recovery for damages 'in a court of law or in some other manner.'" *Id.* at ——. We granted Perez and Delta's petition for review to decide the single issue Perez and Delta (collectively, Delta) presented—preemption.

## II

### APPLICABLE LAW—PREEMPTION

 Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST., art. VI, cl. 2. Under the Supremacy Clause, if a state law conflicts with federal law, the state law is preempted and "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Preemption can take one of several forms. A federal law may preempt a state law expressly. *Great Dane Trailers, Inc. v. Estate of Wells,* 52 S.W.3d 737, 743 (Tex. 2001). It may also preempt a state law impliedly, either (i) when the scheme of federal regulation is sufficiently comprehensive to support a reasonable inference that Congress left no room for supplementary state regulation or (ii) if the state law actually conflicts with federal regulations. *Id.* A state law presents an actual conflict when a party cannot comply with both state and federal regulations or when the state law would obstruct Congress' purposes and objectives. *Id.*

 "The purpose of Congress is the ultimate touchstone" in every preemption case. *Retail Clerks Int'l Ass'n. v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963). Congressional intent is discerned primarily from the statute's language and structure. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Also relevant is the purpose of the statute as a whole, which is revealed through "the reviewing

---

1. Black also sued Abe Haddad d/b/a Smith Travel & Limousine for breach of contract, intentional and negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act, and negligence. Haddad moved for summary judgment, which the trial court granted. The court of appeals reversed that summary judgment and remanded Black's claims against Haddad for trial. Haddad does not challenge that judgment in this Court.

court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.*

We begin our analysis with a discussion of the relevant federal statute and the United States Supreme Court cases that control this area.

### A

### Statutory Framework

Before 1978, the Federal Aviation Act of 1958(FAA) authorized the Civil Aeronautics Board (CAB) to regulate the interstate airline industry. 49 U.S.C. § 1301 (current version at 49 U.S.C. § 40101); *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 222, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). The Act provided that "nothing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 1506. Thus, before 1978, states were allowed to regulate intrastate airfare. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

In 1978, Congress amended the FAA by enacting the Airline Deregulation Act (ADA), which deregulated the industry. 49 U.S.C. § 40101(a)(6), (a)(12)(A) (formerly codified at 49 U.S.C. § 1302(a)(4), (a)(9)). In enacting the ADA, Congress determined that " 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation services.' " *Morales,* 504

U.S. at 378, 112 S.Ct. 2031 (quoting 49 U.S.C. § 1302(a)(4), (a)(9)). Congress included an express preemption provision in the ADA "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales,* 504 U.S. at 378, 112 S.Ct. 2031. The preemption clause states:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States *may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier ....*

49 U.S.C. § 41713(b)(1)(emphasis added).[2] Thus, to determine the propriety of the court of appeals' judgment, we must ascertain whether Black's state law claims fall within the ADA's express preemption provision. If they do, Black's claims fail.

### B

### *Morales* and *Wolens*

The Supreme Court has discussed the scope of the ADA's express preemption clause on two occasions. It first considered the ADA's preemptive scope in *Morales,* 504 U.S. at 374, 112 S.Ct. 2031. There, the Court examined whether the ADA preempted enforcement of guidelines concerning regulation of airline fare advertising through Texas's consumer protection statutes. *Id.* at 378, 112 S.Ct. 2031. The Court focused on the preemption clause's "relating to" language. *Id.* at 383–86, 112 S.Ct. 2031. Relying on its ERISA line of cases and the ordinary meaning of the statute's words, the Court construed the phrase "relating to" broadly to preempt "State enforcement actions

---

**2.** The Blacks base their claims in part on the ADA's savings clause, which provides that "a remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). This clause, however, has been dismissed as a relic of the FAA and does not supersede the specific substantive preemption provision in the ADA. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 385, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

having a connection with, or reference to, airline 'rates, routes, or services.'" *Id.* at 384, 112 S.Ct. 2031. Based on this "broad preemptive purpose," the Court rejected contentions that section 1305(a)(1) [3] only preempted states from actually prescribing rates, routes, or services, or that only state laws specifically aimed at the airline industry were preempted. *Id.* at 384–86, 112 S.Ct. 2031.

Although the Court warned that " 'some state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have preemptive effect," it concluded that the obligations imposed by the guidelines would impact airlines' ability to market their product and the fares they charged. *Id.* at 390, 112 S.Ct. 2031 (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Thus, the guidelines had a "forbidden significant effect" on the airlines' rates, routes, and services, primarily because they restricted fare advertising, which "relates to" price. *Id.* at 388–89, 112 S.Ct. 2031. The Court held that, under these circumstances, the ADA preempted the fare advertising provisions in the general state consumer protection statutes at issue. *Id.* at 391, 112 S.Ct. 2031.

The only other time the Court has addressed the scope of the ADA's preemption provision was in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715. That case involved state law consumer fraud and breach of contract claims arising from retroactive changes in an airline's frequent flyer program. *Id.* at 224–25, 115 S.Ct. 817. The Court focused on another portion of the ADA's preemption clause—the phrase "enact or enforce

any laws"—to determine the ADA's preemptive scope. *Id.* at 226, 115 S.Ct. 817. It held that, like the guidelines at issue in *Morales,* Illinois's consumer fraud statute "serve[d] as a means to guide and police the marketing practices of the airlines." *Id.* at 228, 115 S.Ct. 817. Thus, the ADA preempted the plaintiffs' consumer fraud claims. *Id.*

The Court then turned to the plaintiffs' breach of contract claims. *Id.* It held that the ADA's preemption clause did not shield airlines from "suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 228, 115 S.Ct. 817. The Court reasoned that some of the terms and conditions airlines offer, such as frequent flyer programs, are private obligations and do not amount to State " 'enactment or enforcement [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of section 1305(a)(1)." *Id.* at 228–29, 115 S.Ct. 817. The Court limited its holding, however, to suits based on the terms of the parties' bargain "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233, 115 S.Ct. 817. Courts have interpreted this to mean that if a contract claim cannot be adjudicated without resort to external law, the claim is preempted by the ADA. *See, e.g., Smith v. Comair, Inc.,* 134 F.3d 254, 257 (4th Cir.1998); *Boon Ins. Agency, Inc. v. Am. Airlines, Inc.,* 17 S.W.3d 52, 58–59 (Tex.App.-Austin 2000, pet. denied); *Howell v. Alaska Airlines, Inc.,* 99 Wash.App. 646, 994 P.2d 901, 905 (2000).

---

**3.** 49 U.S.C. section 1305(a)(1) is the previous version of the ADA preemption clause. The current version, the one at issue in this case, 49 U.S.C. section 41713(b)(1), was recodified

into the Federal Aviation Administration Act in 1994 without substantive change. *Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274, 278 (Tex.1996).

## C

### *Kiefer*

In the wake of the Supreme Court's decisions in *Morales* and *Wolens,* lower federal and state courts have struggled with determining when the ADA preempts state law claims.[4] This Court considered the scope of the ADA's preemption clause in *Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274 (Tex.1996). In *Kiefer,* we decided the extent to which "state common-law personal-injury negligence actions against airlines are preempted by the [ADA]." *Id.* at 275. Following *Morales* and *Wolens,* we applied a two-part analysis to determine whether the plaintiffs' personal injury claims were preempted. *Id.* at 281–82; *see also* 49 U.S.C. § 41713(b)(1). First, we examined whether the claims related to airline rates, routes, or services. *Id.* at 281. Second, we explored whether the claims constituted the enactment or enforcement of a state law, rule, regulation, standard or other provision. *Id.* at 281-82. We concluded that, although the plaintiffs' personal injury claims clearly related to airlines' services, their claims did not amount to enforcement of a state law and thus were not preempted. *Id.* at 282.

In reaching this conclusion, we acknowledged the difficulty in differentiating between claims that are preempted and those that are not. *Id.* at 281. We noted that, unlike the state consumer protection legislation at issue in *Morales,* negligence actions do not "carry the same 'potential for intrusive regulation of airline business practices....'" *Id.* at 282 (quoting *Wol-*

*ens,* 513 U.S. at 227, 115 S.Ct. 817). We were careful to state, however, that certain tort actions, such as negligent misrepresentation, may be indistinguishable from the statutory consumer protection actions in *Morales* and *Wolens. Id.* at 283. And depending on the nature and extent of damages sought, even simple negligence actions may constitute an impermissible regulation of the airline industry through state tort law. *Id.* at 282.

Rather than declare categorically that personal injury claims are *always* excepted from preemption, we focused on the extent to which the claims in *Kiefer* threatened to encroach on the congressional objective of airline deregulation. *Id.* Because preemption depends on the nature of the particular claim, we observed that the ADA's preemptive effect on other state law claims would require a "closer working out." *Id.* at 281. With respect to breach of contract claims, we noted that the "very strict limitation" *Wolens* puts on permissible contract claims "demonstrates the breadth of ADA preemption." *Id.* Like *Wolens,* we recognized that the ADA allows breach of contract claims only if they involve contract terms voluntarily undertaken by the parties. *Id.* at 281–82. And we noted that voluntary contractual undertakings do not "effectuate purposes that could have a prohibited regulatory effect on airlines." *Id.* at 282.

With this framework in mind, we turn to a "closer working out" of the ADA preemption clause with respect to Black's claims. *Wolens,* 513 U.S. at 235, 115 S.Ct. 817; *Kiefer,* 920 S.W.2d at 281.

---

**4.** *See, e.g., Taj Mahal Travel, Inc. v. Delta Airlines Inc.,* 164 F.3d 186, 192 (3rd Cir. 1998); *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1263 (9th Cir.1998); *Alasady v. N.W. Airlines Corp.,* Civ. No. 02–3669, 2003 WL 1565944, at *7, 2003 U.S. Dist. LEXIS 3841, at *24 (D.Minn. Mar. 3, 2003); *Somes v. United Airlines, Inc.,* 33 F.Supp.2d 78, 81 (D.Mass.1999); *Aquino v. Asiana Airlines, Inc.,* 105 Cal.App.4th 1272, 130 Cal.Rptr.2d 223, 230 (2003).

## III

## ANALYSIS

■ Black contends that *Wolens* and *Kiefer* shield his breach of contract claim from preemption. He argues that, by refusing to provide his wife a first-class seat on the flight from Dallas to Las Vegas, Delta breached a self-imposed contractual obligation. Because his claims arise from Delta's own undertakings, as opposed to an obligation imposed by state law, Black argues that there is little risk similar state claims would undo federal deregulation. Thus, according to Black, his claims are not subject to preemption under the ADA.

Delta, on the other hand, contends that Black's claims are preempted by the ADA because they relate directly to the airline services Delta provides. Delta argues that ticketing and boarding procedures are fundamental to airline services and are far removed in character from the voluntary frequent flyer program at issue in *Wolens*. Specifically, Delta contends that because Department of Transportation (DOT) regulations define and control the procedures for denied boarding, Black's state law claims are preempted. For the reasons discussed below, we agree with Delta.

## A

## Related to an Airline's Services

■ To answer whether a claim is preempted by the ADA, we first determine whether the claim is related to an airline's prices or services within the meaning of the ADA's preemption provision. *Kiefer*, 920 S.W.2d at 281. The ADA does not specify, and the United States Supreme Court has not determined, what activities constitute airline services. It is not surprising, then, that courts have fashioned inconsistent tests for determining whether a state law action is related to an airline's services. *Compare Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir.1998), *with Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995). The United States Court of Appeals for the Ninth Circuit has narrowly defined services as "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Charas*, 160 F.3d at 1261. That court reasoned that because the word services appears next to the words rates and routes in section 41713(b)(1), "services" must refer to "the provision of air transportation to and from various markets at various times." *Id.* at 1266. Under this interpretation, in-flight beverages, personal assistance to passengers, handling luggage, keeping aisles clear, and other amenities are not included in the definition of services. *Id.* at 1261.

The Fifth Circuit's more expansive interpretation of airline services includes "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Hodges*, 44 F.3d at 336. *Hodges* relied in part on the CAB's statements implementing the ADA, which made clear that reservation and boarding practices are services within the meaning of the ADA. *See id.* at 337 (citing 44 Fed.Reg. 9948, 9951 (Feb. 15, 1979)); *see also Smith v. Am. W. Airlines, Inc.*, 44 F.3d 344, 347 (5th Cir.1995) (limiting services to "economic decisions concerning boarding, e.g., overbooking or charter arrangements, and contractual decisions whether to board particular ticketed passengers"). The *Hodges* court reasoned that, because these "matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline," Congress intended them to be services protected from state regulation. 44 F.3d at 336.

In this case, Black's claims relate to Delta's boarding procedures and seating policies. Although several courts have fashioned different tests to determine whether a state law action relates to an airline's services, most courts generally agree that state law claims involving seating and boarding procedures relate to services.[5] This approach is consistent with both the Fifth and Ninth Circuit Court of Appeals' conclusions that an airline's boarding procedures are an integral part of the services that an airline provides. *See, e.g., Somes v. United Airlines, Inc.,* 33 F.Supp.2d 78, 85 (D.Mass.1999) (noting that both the Fifth and Ninth Circuits' definitions of services would include boarding). The mere fact that Black's claims relate to the denial of first-class status, rather than point-to-point transportation, does not remove his claims from the definition of "services." *See Wolens,* 513 U.S. at 226, 115 S.Ct. 817 (noting that the term "services" includes "access to flights and class-of-service upgrades").

Unlike the frequent flyer program in *Wolens,* seating policies and boarding procedures are not peripheral to the operation of an airline, but are inextricably linked to the contract of carriage between a passenger and the airline and have a definite "connection with, or reference to" airline services. *Morales,* 504 U.S. at 384, 112 S.Ct. 2031. Given *Morales'* broad interpretation of the words "relating to," and the generally accepted understanding of the word "services," we conclude that an airline's boarding procedures and seating policies "relate to" the services an airline provides to its customers.

We next consider whether the ADA prohibits enforcement of Black's claims.

## B

### State Enactment or Enforcement

The second step in the preemption analysis involves determining whether Black's claims, if allowed, would constitute enactment or enforcement of a state law within the meaning of the ADA's preemption clause. *Kiefer,* 920 S.W.2d at 281. In deciding whether contract claims are preempted, we distinguish between obligations dictated by the State and those voluntarily undertaken by the airline. *Wolens,* 513 U.S. at 233, 115 S.Ct. 817. When parties privately negotiate a contract's terms and then sue in state court

---

**5.** *See, e.g., Smith v. Comair,* 134 F.3d 254, 259 (4th Cir.1998) ("Undoubtedly, boarding procedures are a service rendered by an airline."); *Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia,* 73 F.3d 1423, 1434 (7th Cir.1996) ("airline 'services' ... include ticketing"); *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995); *Alasady,* at *7, 2003 U.S. Dist. LEXIS 3841, at *24 (noting that "the term 'service' in § 41713(b)(1) encompasses boarding procedures"); *Somes,* 33 F.Supp.2d at 85 ("the denial of boarding and the refusal to transport a particular passenger, ... without question, are at the heart of the 'services' that airlines provide"); *Nazarian v. Compagnie Nationale Air France,* 989 F.Supp. 504, 510 (S.D.N.Y.1998) ("[C]ases that involve ticketing, boarding, in-flight services, or the implementation of airline policies, such as 'bumping' of passengers, denial of boarding, ... relate to services and are preempted."); *Peterson v. Continental Airlines, Inc.,* 970 F.Supp. 246, 250 (S.D.N.Y. 1997) ("A flight crew's conduct during the boarding stage of a flight, specifically, flight attendants' efforts to locate appropriate seat assignments and resolve seat conflicts, constitutes an airline service...."); *Pearson v. Lake Forest Country Day Sch.,* 262 Ill.App.3d 228, 199 Ill.Dec. 324, 633 N.E.2d 1315, 1320 (1994) ("An airline's boarding and seating policies come within the ambit of the 'services' it provides to its customers."); *El–Menshawy v. Egypt Air,* 276 N.J.Super. 121, 647 A.2d 491, 492 (Law Div.1994) (The plaintiff's claim against the airline—"that it failed to honor an allegedly confirmed reservation—beyond a shadow of a doubt 'relates to' airline services.").

for breach of those terms, there is generally no specter of state-imposed regulation. *Id.* at 228–29, 115 S.Ct. 817. Thus, as we noted in *Kiefer,* the enforcement of a contractual commitment voluntarily undertaken does not amount to state enactment or enforcement of a law that the ADA's preemption provision forbids. 920 S.W.2d at 281–82.

In *Wolens,* the Supreme Court determined that a frequent flyer program was a self-imposed undertaking between private parties and was therefore too tenuous or peripheral to constitute state enforcement. 513 U.S. at 228–29, 115 S.Ct. 817. Unlike Wolens' claims that related to a self-imposed frequent flyer program, Black's claims relating to Delta's ticketing and boarding procedures implicate directly the federal interest in deregulated air transportation. *See Somes,* 33 F.Supp.2d at 85; *Rockwell v. UPS,* No. 2:99–CV–57, 1999 WL 33100089, at *1, 1999 U.S. Dist. LEXIS 22036, at *6 (D.Vt. July 7, 1999) (noting that "preemption applies to services which are 'regular, recurrent, or necessary features of actual flight or airline operations' (as opposed to beverage services and similar amenities)") (quoting *Somes,* 33 F.Supp.2d at 83); *Smith,* 134 F.3d at 259; *Chukwu v. Bd. of Dirs. British Airways,* 889 F.Supp. 12, 13 (D.Mass.1995). Thus, contrary to the ADA's purpose, Black's claims have the potential for "intrusive regulation of airline business practices." *Kiefer,* 920 S.W.2d at 282.

▆▆ When Black purchased the airline tickets, a binding contract of carriage was created between Black and Delta. *See Woodard v. Tex. & P. Ry. Co.,* 126 Tex. 30, 86 S.W.2d 38, 39 (1935); *Boon,* 17 S.W.3d at 55. Pursuant to the regulatory authority conferred by Congress under the ADA, the DOT promulgated comprehensive regulations interpreting the ADA. Black and Delta's contract for carriage incorporates these regulations. *See* 14 C.F.R. §§ 253.4, .5; *Wolens,* 513 U.S. at 230, 115 S.Ct. 817 (authorizing airlines to incorporate the federal regulations into their contracts of carriage). In particular, part 250 permits the DOT to regulate "oversales" in air carrier service. 14 C.F.R. §§ 250.1–.9. These regulations require every air carrier to "establish priority rules and criteria for determining which passengers holding confirmed reserved space shall be denied boarding on an oversold flight in the event that an insufficient number of volunteers" agree to relinquish their seat. *Id.* § 250.3.

Section 250.5 requires airlines to pay compensation to any passenger who is involuntarily denied boarding caused by an oversold flight. *Id.* § 250.5. A passenger who is involuntarily denied boarding, however, is not required to accept this compensation and can instead "decline the payment and seek to recover damages in a court of law or in some other manner." *Id.* § 250.9. The federal regulations also provide that under certain circumstances, a passenger denied boarding involuntarily from an oversold flight is not entitled to receive compensation from the airline. *Id.* § 250.6. In particular, if a passenger "is offered accommodations or is seated in a section of the aircraft other than that specified on the ticket at no extra charge," then that passenger is not eligible for denied boarding compensation. *Id.* § 250.6(c).

▆▆ Black contends that, pursuant to section 250.9, he had the option to decline compensation under the federal scheme and instead "seek to recover damages in a court of law." *Id.* § 250.9(b). The court of appeals agreed and held that, although Black was not entitled to denied boarding compensation, he could forego the remedies provided by the DOT regulations and seek damages in court. —— S.W.3d at ——. The court of appeals based its decision on the DOT regulations relating to

passengers that are *involuntarily* denied boarding. *Id.; see also* 14 C.F.R. § 250.9. But Black and the court of appeals misread these regulations. Black was not denied boarding, as that term relates to section 250.9.

The passenger option of declining payment from the airline and instead seeking recovery in a court of law is reserved for those passengers who are involuntarily denied boarding and thus eligible for denied boarding compensation. 14 C.F.R. § 250.9. Because Delta offered Black's wife another seat on the same flight, she was not denied boarding. Even if we considered Black's wife to have been involuntarily denied first-class boarding, the Blacks do not have a valid claim for "denied boarding compensation." This is so because they fall within one of the eligibility exceptions to qualify for compensation—a passenger is not eligible for denied boarding compensation if the airline offers the passenger accommodations in another section of the aircraft at no charge. *Id.* § 250.6. Because Delta offered Black and his wife various accommodations, including coach seats, Black and his wife were ineligible for denied boarding compensation. *Id.* And because Black and his wife were not eligible to receive the denied boarding compensation from Delta, they could not possibly decline this compensation and "seek to recover damages in a court of law." *Id.* § 250.9. Accordingly, Black cannot rely on section 250.9, which, as a prerequisite to recover, requires the party to be eligible to receive denied boarding compensation.

As discussed above, the parties' contract incorporated the DOT regulations on denied boarding compensation. Black, however, seeks to enlarge Delta's obligations to him. He attempts to modify the contract terms to allow him and his wife to forego the regulatory remedies and instead sue in court. This Court, however, is confined, "in breach-of-contract actions, to the parties' bargain." *Wolens,* 513 U.S. at 233, 115 S.Ct. 817. We cannot enlarge or enhance that bargain based on state law or policies external to the agreement. *Id.* Nothing in the contract entitles Black to the external remedy of reimbursement for the cost of a private chartered jet. The regulations promulgated under the ADA, which are incorporated as part of the contract, provide the procedure and remedy in the event a passenger is denied boarding but offered specified accommodations, and therefore preclude the additional remedies Black has pursued in state court. *See* 14 C.F.R. §§ 250.1–.9.

Even were the contract silent about the federal regulations, other courts have applied similar reasoning to preempt breach of contract claims that relate to price or service and seek to impose state laws or policies.[6] As the court of appeals in this case correctly noted:

---

6. *See, e.g., Lyn–Lea Travel Corp. v. Am. Airlines, Inc.,* 283 F.3d 282, 288 (5th Cir.2002) (breach of contract claim was preempted because it had a connection with an airline's prices and services); *Smith,* 134 F.3d at 259 (breach of contract claim was preempted to the extent it complained of an airline's boarding procedures); *Statland v. Am. Airlines, Inc.,* 998 F.2d 539, 542 (7th Cir.1993) (passenger's breach of contract challenge to an airline's ten percent cancellation policy was preempted because it related to price); *Breitling U.S.A. Inc., v. Fed. Express Corp.,* 45 F.Supp.2d 179, 186–87 (D.Conn.1999) (breach of contract claim arising from a contract to transport watches was preempted because it amounted to an enlargement or enhancement based on state laws or policies external to the parties' agreement); *Leonard v. N.W. Airlines, Inc.,* 605 N.W.2d 425, 431 (Minn.Ct.App.2000) (breach of contract claim regarding a reissue fee was preempted because it related to price and sought to enforce state law); *Blackner v. Continental Airlines, Inc.,* 311 N.J.Super. 10, 709 A.2d 258, 260 (1998) (breach of contract claim was

[W]e cannot overlook the fact that the alleged contractual violation at issue in this appeal involves a common condition unique to the airline industry—the failure to seat an allegedly confirmed ticket holder because of overbooking—and that unlike the frequent-flier agreements at issue in *Wolens,* specific federal regulations govern compensation for air passengers who are involuntarily prevented from boarding a flight due to overbooking.

—— S.W.3d at ——. These "specific federal regulations" have a national purpose in that they provide a uniform system of compensation to passengers. If passengers were permitted to challenge airlines' boarding procedures under state common law, the airline industry would potentially be subject to regulation by fifty different states. *Smith,* 134 F.3d at 258–59 (allowing passengers to challenge boarding procedures would permit "the fifty states to regulate an area of unique federal concern—airlines' boarding practices."); *see also* John W. Freeman, *State Regulation of Airlines and the Airline Deregulation Act of 1978,* 44 J. AIR L. & COM. 747, 755 (1979) (noting that "the effect of the provision was to 'prevent conflicts and inconsistent regulations' ") (quoting H.R.REP. No. 1211, 95th Cong., 2d Sess. 16 (1978)). The fact that federal regulations expressly address airline boarding procedures strengthens our conclusion that Black's breach of contract claims resulting from Delta's boarding and seating procedures are preempted by the ADA. To hold otherwise could create extensive multi-state litigation, launching inconsistent assaults on federal deregulation in the airline industry, every time an airline reassigned a passenger's seat.

We conclude that Delta's boarding and seating policies relate to the services it provided to Black, and that Black's claims can only be adjudicated by reference to laws and policies external to its contract with Delta. Accordingly, we hold that 49 U.S.C. section 41713(b) preempts Black's contract claims.

We now turn to Black's remaining claims for misrepresentation and fraud, which he argues survive ADA preemption. We disagree. Because Black's misrepresentation and fraud claims are premised on Delta's ticketing and boarding procedure, they are directly related to Delta's services. *See* discussion *supra* Part III.A. The court of appeals concluded, however, that because Black's misrepresentation claims did not turn on any requirement imposed by a Texas legislative body, they were not preempted. —— S.W.3d at ——. To the contrary, state tort actions can be state enforcement under 49 U.S.C. section 41713(b)(1). *See, e.g., Buckman Co. v. Plaintiff's Legal Comm.,* 531 U.S. 341, 351, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (recognizing the regulatory effect of state

---

preempted because it constituted an enlargement or enhancement of a passenger's rights based on state laws or policies); *Boon Ins. Agency, Inc. v. Am. Airlines, Inc.,* 17 S.W.3d 52, 58–59 (Tex.App.-Austin 2000, pet. denied) (breach of contract claim involving a reissue fee was preempted because it sought to modify the contract by relying on state law); *Howell v. Alaska Airlines, Inc.,* 99 Wash.App. 646, 994 P.2d 901, 905 (2000) (breach of contract challenge to an airline's refusal to refund the price of a nonrefundable ticket was preempted because it sought to enlarge or enhance the agreement based on external state laws). *But see Travel All Over the World, Inc.,* 73 F.3d at 1432 (breach of contract claim was not preempted because it involved the breach of a self-imposed undertaking); *Aquino,* 130 Cal.Rptr.2d at 233 (breach of contract claim was not preempted because it did not involve a state policy).

law damage claims and their potential for frustrating congressional objectives); *Kiefer*, 920 S.W.2d at 282.

Moreover, both *Wolens* and *Kiefer* suggest that state misrepresentation and fraud claims are preempted by the ADA. *Wolens*, 513 U.S. at 228, 115 S.Ct. 817; *Kiefer*, 920 S.W.2d at 283. *Wolens* held that state law claims under a state consumer fraud act were preempted by the ADA. *Wolens*, 513 U.S at 228, 115 S.Ct. 817. Claims under a consumer fraud statute are comparable to claims for misrepresentation. In *Kiefer*, we indicated that "an action for negligent misrepresentation might be ... indistinguishable from the statutory consumer protection actions in *Morales* and *Wolens*." *Kiefer*, 920 S.W.2d at 283. Both would impose state policies on the operation of air carriers that are external to the parties' agreement. *Wolens*, 513 U.S. at 229 n. 5, 115 S.Ct. 817; *Kiefer*, 920 S.W.2d at 282. A state's common law cannot operate against an airline in this context when it would constitute state enforcement of a law relating to airline services. *See Morales*, 504 U.S. at 383, 112 S.Ct. 2031. Accordingly, because Black's misrepresentation and fraud claims relate to the services Delta provides and if allowed would amount to enactment or enforcement of state law, they are preempted.

## IV

### CONCLUSION

For these reasons, we reverse the court of appeals' judgment in part and render judgment that Black take nothing on his claims against Delta Airlines, Inc. and Al Perez.