**Affirmed and Memorandum Opinion filed October 25, 2011.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-00917-CV

---

### A.P. KELLER, INC., ALBERT P. KELLER, KATHLEEN KELLER, BRIAN KELLER, INDIVIDUALLY AND AS NEXT FRIEND OF CARSON KELLER AND DYLAN KELLER, LESLEY KELLER, ALBERT L. KELLER, INDIVIDUALLY AND AS NEXT FRIEND OF LONDON SARA KELLER, BERKELEY EVA KELLER, AND ALBERT SANDERS KELLER, AND LAURA ANN KELLER, Appellants

### V.

### CONTINENTAL AIRLINES, INC. AND AIRSERV CORPORATION, Appellees

---

**On Appeal from the County Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 947110-A**

---

## M E M O R A N D U M   O P I N I O N

Appellants, A.P. Keller, Inc., Albert P. Keller, Kathleen Keller, Brian Keller, Individually and As Next Friend of Carson Keller and Dylan Keller, Lesley Keller, Albert L. Keller, Individually and As Next Friend of London Sara Keller, Berkeley Eva Keller, and Albert Sanders Keller, and Laura Ann Keller, appeal a summary judgment in favor of appellees, Continental Airlines, Inc. and Airserv Corporation, in appellants' suit

seeking damages allegedly resulting from cancellation of their reservations on a Continental flight. We affirm.

## I. BACKGROUND

A.P. Keller, Inc. purchased tickets on a Continental flight for eleven members of the Keller family to travel on March 14, 2009 from Houston to Salt Lake City, Utah for a ski vacation. When the tickets were purchased in October 2008, the flight was scheduled to depart at 9:40 a.m. However, in January 2009, Continental changed the departure time to 9:00 a.m. Continental informed appellants' travel agent of the change, but appellants claim the travel agent did not notify them. Six weeks before the flight, appellants' assistant, Cindy Giles, printed the family's seat assignments from Continental's website. Although the printout showed the new departure time, Giles did not notice the change. Giles also accessed the website several other times before the flight, including the preceding day, to check various matters such as baggage charges but did not notice the change in departure time. Further, appellants did not check in online before the flight.

Appellants arrived at the airport at 8:15 a.m. At about 8:20, they began checking nineteen items, including luggage, car seats, and ski equipment, with a skycap. Due to equipment difficulties, the skycap could not initially print all nineteen claim tickets, but a Continental employee, Darren Elwood, eventually assisted in generating all the claim tickets. The skycap then experienced difficulties printing the boarding passes. At about 8:30 a.m., a family member remarked that a departure sign showed the flight scheduled for 9:00 a.m. The family again sought assistance from Elwood in printing the boarding passes, but it was several minutes before he could attend to them because he was busy with other passengers who preceded appellants in line.

By about 8:40 a.m., Elwood stated that the flight was boarding and clearing standby passengers. The senior family member, Albert Keller, Sr. remarked, "Give me some boarding passes, and we'll get on there." Elwood pointed out the line at security, which Keller admitted in his deposition was "longer than usual" due to Spring Break travelers, and said the family would not make the flight. In response to Keller's requests,

2

Elwood stated the airline was not permitted to escort the family through security or "hold" the plane and inform gate personnel that they were enroute.

Elwood successfully rebooked five of the tickets on another airline for a flight two days later but stated that he had to work on rebooking the other six tickets. The family first chose the rebooking option but then decided it was unworkable because they had prepaid for other aspects of the trip and several other family members were already in Utah. The family then chartered a plane at a cost of $26,988.84 for the flight to Salt Lake City but returned to Houston after the vacation on the Continental tickets previously purchased. Continental reimbursed them for the unused portions of their tickets and provided $100 travel vouchers.

Appellants sued Continental and Airserv, which employed the skycap who serviced appellants, for breach of contract and negligence. Appellants alleged that Airserv was Continental's "actual and apparent agent." Appellants also sued their individual travel agent and his company. Continental and Airserv filed separate traditional motions for summary judgment.[1] On September 1, 2010, the trial court signed separate orders granting the motions for summary judgment of both Continental and Airserv and ordering that appellants take nothing from either defendant. On September 16, 2010, the trial court severed the claims against appellees from the pending claims against the travel agents, thereby making the September 1, 2010 orders a final judgment.

## II. STANDARD OF REVIEW

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A defendant moving for summary judgment must conclusively negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish

---

[1] The trial court previously granted an earlier motion for summary judgment filed by Continental but later granted appellants' motion to reconsider and set aside the summary judgment. Subsequently, Continental and Airserv filed the motions for summary judgment that the trial court granted and are at issue on appeal. Hereinafter, all references to motions for summary judgment mean these latter motions.

3

each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the defendant establishes its right to summary judgment, the burden shifts to the plaintiff to raise a genuine issue of material fact. *Id.* We review a summary judgment *de novo*. *Knott*, 128 S.W.3d at 215–16. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in his favor. *Id.* We must uphold a summary judgment if the appellant does not challenge and negate every ground on which summary judgment could have been granted. *Wohlstein v. Aliezer*, 321 S.W.3d 765, 772 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

### III. ANALYSIS

Under Rule 5 of Continental's Contract of Carriage governing the plane tickets, it may cancel the reservation and deny boarding of a passenger who does not comply with the check-in time limits set forth in Rule 5. These time limits include the requirement that a passenger on a domestic flight must complete his ticket purchase, check in, obtain a boarding pass, and complete baggage check at least thirty minutes before the scheduled departure time and be present at the loading gate at least fifteen minutes before departure. Rule 5 also provides that the time limits are minimum requirements, passenger and baggage processing times may differ among airports, and the passenger bears the responsibility to arrive at the airport with sufficient time to satisfy the time limits.

Continental acknowledges that it cancelled appellants' reservations but maintains it complied with the Contract of Carriage because appellants had not completed the check-in process by 8:40 a.m. According to appellants, by arriving at the airport at 8:15 a.m. for a 9:00 a.m. flight, they allowed sufficient time (fifteen minutes) to complete the check-in process before the 8:30 a.m. deadline but appellees' equipment malfunction prevented appellants from timely completing these actions. They argue that therefore Continental, as opposed to appellants, "flunked" the boarding process. Thus, appellants effectively contend that Continental breached the Contract of Carriage by improperly cancelling the reservations or denying boarding to appellants and its alleged negligence

4

resulted in the cancellation. Appellants seek to recover either the cost of the chartered plane or the pre-paid expenses for the vacation because these amounts were comparable.[2]

In its motion, Continental presented two alternative grounds for summary judgment relative to all of appellants' claims: (1) they are barred under the preemption clause of the federal Airline Deregulation Act (ADA); or (2) even if preemption does not apply, appellants' claims for consequential damages are expressly precluded under the Contract of Carriage. Airserv also moved for summary judgment on the preemption ground, arguing that, as Continental's vendor, Airserv is entitled to assert the same preemption defense as Continental.

For the reasons discussed below, we uphold the summary judgment based on the preemption ground. Because appellants present the same claims and appellate arguments relative to both appellees and do not challenge Airserv's contention that it may claim the same defenses as Continental, we will address the preemption ground collectively for appellees.[3]

## A.    The Preemption Clause

The preemption clause of the ADA provides in pertinent part:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).

Appellees rely on *Delta Airlines, Inc. v. Black*, 116 S.W.3d 745 (Tex. 2003), a seminal Texas case regarding the preemption clause. In *Black*, the plaintiff purchased

---

[2] Despite alleging negligence as one of their claims, appellants also contend on appeal that Continental's cancellation of the reservations was "malicious," although appellants do not seem to assert a separate cause of action based on this allegation.

[3] Appellants' arguments on appeal focus almost entirely on the alleged liability of Continental, although they mention Airserv when noting Continental is purportedly liable for the actions of Airserv as its alleged agent. Appellants do not specifically focus on any alleged theory of independent liability against Airserv. Nevertheless, because we ultimately affirm summary judgment for both appellees, we will treat appellants' arguments as challenging summary judgment in favor of both appellees.

two airline tickets to travel with his wife from Dallas to Las Vegas, and the invoice from his travel agent showed two first-class reservations. *Id.* at 747. At the airport, the gate supervisor informed the plaintiff that the airline had a confirmed first-class seat for the plaintiff but only a confirmed coach seat for his wife. *Id.* The airline offered several alternatives which all involved either one or both passengers traveling in coach or the passengers flying first-class albeit on a later or indirect flight. *Id.* The plaintiff declined all offers and instead chartered a private jet to the couple's destination. *Id.* at 748. He then sued the airline for breach of contract, fraud, and negligent misrepresentation and the gate supervisor for misrepresentation only, seeking to recover the cost of the chartered flight. *Id.* The Supreme Court of Texas ultimately affirmed the trial court's grant of summary judgment in favor of both defendants based on the preemption doctrine. *Id.* at 748–57.

As the court recognized, the United States Congress deregulated the airline industry in 1978 by enacting the ADA, which includes an express preemption clause. *Id.* at 749 (citing 49 U.S.C. § 40101(a)(6), (a)(12)(A)). Because of the broad "related to" language used therein, the preemption clause not only preempts states from actually prescribing rates, routes, or services of an air carrier but also preempts state enforcement actions "'having a connection with or reference to, airline rates, routes, or services.'" *Id.* at 749–50 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–86 (1992)). The *Black* court applies a two-prong test to determine whether a claim is preempted by the ADA: (1) whether the claim is related to an airline's prices or services within the meaning of the preemption clause; and (2) whether permitting the claim to proceed would constitute enactment or enforcement of a state law within the meaning of the preemption clause. *Id.* at 752, 753.

With respect to the first prong, the court concluded that all the plaintiff's claims concerning denial of first-class status were "related to" the airline's boarding procedures and seating policies. *Id.* at 753, 756. The court stated that, although various courts had fashioned inconsistent standards for determining whether a state law claim "relates to an

6

airline's services," the majority of courts have held state law claims involving seating and boarding procedures "relate to services" within the scope of the preemption clause. *Id.* The court recognized that "seating policies and boarding procedures are not peripheral to the operation of an airline, but are inextricably linked to the contract of carriage between a passenger and the airline and have a definite 'connection with or reference to' airline services." *Id.* (quoting *Morales*, 504 U.S. at 384).

With respect to the second prong, the court stated that, in deciding whether contract claims are preempted, it must distinguish between "obligations dictated by the State" and those voluntarily undertaken by the airline. *Id.* (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995)). In particular, when parties privately negotiate a contract's terms and then sue in state court for breach of those terms, there is generally no specter of state-imposed regulation. *Id,* at 753–54 (citing *Wolens*, 513 U.S. at 228–29). Thus, enforcement of a contractual commitment voluntarily undertaken does not amount to enforcement of state law as forbidden by the preemption clause. *Id.* at 754 (citing *Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 281–82 (Tex. 1996)). As an example, the court cited *Wolens*, in which the United States Supreme Court determined that permitting a breach-of-contract claim based on an airline's retroactive changes to its frequent-flyer program would not constitute state enforcement forbidden by the preemption clause because a frequent-flyer program is a self-imposed undertaking between private parties and therefore too tenuous or peripheral to constitute state enforcement. *Id.* (citing *Wolens*, 513 U.S. at 228–29).

In contrast, the court held that the plaintiff's claims relating to the airline's ticketing and boarding procedures implicated directly the federal interest in deregulated air transportation and therefore, contrary to the purpose of the ADA, bore the potential for "'intrusive regulation of airline business practices.'" *Id.* (quoting *Kiefer*, 920 S.W.2d at 282). As the court recognized, "[i]f passengers were permitted to challenge airlines' boarding procedures under state common law, the airline industry would potentially be subject to regulation by fifty different states." *Id.* at 756 (citing *Smith v. Comair*, 134

7

F.3d 254, 258–59 (4th Cir. 1998)). Finally, the court held that the plaintiff's tort claims for fraud and negligent misrepresentation, if allowed, would also amount to enforcement of state law. *Id.* at 756–57.

In the present case, appellees contend that, likewise, all of appellants' claims "relate to" Continental's "services" and seek enforcement of state law because they request consequential damages (the cost of their private chartered jet) under state contract and tort law based on Continental's boarding procedures—its decision to cancel appellant's reservations for their failure to comply with the time limits set forth in the Contract of Carriage, irrespective of which party was at fault for the non-compliance.

## B.    Appellants' Contentions

In their two stated issues, appellants assert (1) the preemption doctrine does not apply, or (2) alternatively, even if the doctrine applies, appellants are entitled to recover damages under the Contract of Carriage.

Although appellants present an appellate issue generally stating the preemption doctrine does not apply, the sole argument that follows does not concern applicability of the preemption doctrine. Instead, the argument concerns Continental's alternative summary-judgment ground that, even if appellants' claims are not barred by the preemption clause, the Contract of Carriage specifically precludes recovery of consequential damages. Specifically, appellants argue that they are not bound by Continental's contractual limitation on damages because there is no evidence Continental provided notice to appellants of the limitation as required under federal law. *See* 14 C.F.R. § 253.4 (providing that "an air carrier may not claim the benefit as against the passenger of, and the passenger shall not be bound by, any contract term incorporated by reference [in the plane ticket] if notice of the term has not been provided to that passenger in accordance with" applicable regulations governing such notice.)

Appellants cite no authority that this notice provision is a prerequisite to application of, or otherwise pertains to, the preemption clause. Moreover, appellants advance no argument regarding the two prongs of the preemption analysis, and they do

8

not cite *Black* under this issue, much less attempt to distinguish it from the facts of this case. Accordingly, appellants have, in effect, failed to address the preemption doctrine in their issue purporting to challenge its application.

In their second issue, appellants state, "Even if this Court determines preemption applies, that assumption does not dictate the absence of any relief." Then, appellants again advance arguments that mostly seem to challenge Continental's alternative summary-judgment ground that the Contract of Carriage precludes recovery of consequential damages: (1) airlines would be incentivized to arbitrarily cancel reservations if they may successfully disclaim payment of consequential damages; (2) the provision in the Contract of Carriage cited by Continental does not preclude consequential damages; and (3) appellants may recover consequential damages because Continental violated rules regarding tender and payment of denied boarding compensation.

As appellees assert, appellants seem to "put[] the cart before the horse" by suggesting their claims may proceed despite the preemption doctrine without first demonstrating the doctrine is inapplicable. However, although appellants do not expressly challenge application of the preemption doctrine under this second issue, their third contention regarding denied boarding compensation could be construed as challenging application of the doctrine, rather than a reason their claims may proceed even if the doctrine is applicable; this contention is the only instance in which appellants cite *Black*, and in the referenced portion of *Black*, the court considered a similar argument relative to its effect on the preemption doctrine.

To support their contention, appellants cite federal regulations governing denied boarding compensation relative to "oversold" flights and advance reasons that Continental allegedly failed to comply: it did not pay or tender the required minimum compensation; it was not permitted to offer vouchers unless they informed appellants of their rights and appellants rejected those rights; and it did not provide the required written explanation regarding denied boarding compensation. *See generally* 14 C.F.R. § 250.1–

9

.11. Appellants then cite the particular regulation requiring an airline to inform a passenger who has been denied boarding, "Acceptance of the [required minimum] compensation may relieve (name of air carrier) from any further liability to the passenger caused by its failure to honor the confirmed reservation. However, the passenger may decline the payment and seek to recover damages in a court of law or in some other manner." *Id.* at § 250.9(b). To the extent that appellants suggest this language prescribes an exception to the preemption doctrine allowing a suit to proceed in state court for direct and consequential damages, appellants were not denied boarding within the purview of the above-cited regulations.

These regulations govern the situation in which a passenger is denied boarding because the flight was oversold (i.e., "bumped") and no other passenger has accepted the airline's request for a volunteer to relinquish his seat in return for certain compensation. *See generally id.* at 250.1–.11. Appellants presented evidence that they were denied boarding and the flight was oversold. However, their own summary-judgment evidence establishes they were not denied boarding *because* the flight was oversold. In particular, appellants were not checked in but denied boarding at the gate because the flight was oversold and there were an insufficient number of volunteers. To the contrary, they were denied boarding because their reservations were cancelled for failure to comply with the check-in time limits, irrespective of which party was at fault for the failure to comply. The fact that the flight happened to be oversold did not transform cancellation of their reservations into a denied boarding situation under the above-cited federal regulations.

In *Black*, the plaintiff similarly argued that his claims were not barred by the preemption clause because, under section 250.9, a passenger may voluntarily decline denied boarding compensation and seek damages in a court of law. *See* 116 S.W.3d at 754 (citing 14 C.F.R. § 250.9(b)). However, construed in context, the court then rejected the plaintiff's argument that he was eligible to file suit in a court of law to recover the cost of his chartered flight because he and his wife were not denied boarding within the purview of the federal regulations; they were offered seats on the flight, albeit in coach despite their first-class reservations. *Id.* at 755. Because the plaintiff and his wife were

ineligible for denied boarding compensation, "they could not possibly decline this compensation" and "'seek to recover damages in a court of law.'" *Id.* (quoting 14 C.F.R. § 250.9(b)).

Although the present case differs from *Black* with respect to the fact that appellants were not offered seats on the flight, they likewise were not denied boarding under the circumstances governed by the federal regulations. Because they were ineligible for denied boarding compensation under these provisions, they "could not possibly" decline such compensation and seek consequential damages in a court of law. Accordingly, appellants have not raised a genuine issue of material fact on their contention that any exception prescribed by the regulations negated application of the preemption doctrine.[4]

In sum, appellants have failed to establish that the trial court erred by granting summary judgment in favor of appellees on all of appellants' claims. We overrule both of appellants' issues and affirm the trial court's judgment.


/s/    Charles W. Seymore
        Justice


Panel consists of Justices Anderson, Seymore, and McCally.

---

[4] Because appellants were not denied boarding within the purview of the referenced federal regulations, we need not decide whether the regulations create an exception to the preemption doctrine.